Marilyn J. BUCK, Appellant,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Appellee.

No. 88–2760.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1989.

Decided Sept. 14, 1989.

James W. Stanley, North Little Rock, Ark., for appellant.

Joseph B. Liken, Dallas, Tex., for appellee.

Before BEAM, Circuit Judge,
BRIGHT, Senior Circuit Judge, and
HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Marilyn Buck appeals from the judgment of the District Court[1] affirming the decision of the Secretary denying her claim for disability benefits. We find that the Secretary erred by relying solely on the use of the Medical–Vocational Guidelines to establish the existence of substantial gainful employment available to the claimant, as claimant suffers nonexertional impairments not contemplated by the Guidelines, and that the Secretary improperly discredited one of the psychological reports. Accordingly, we reverse the decision of the District Court and remand the case for further proceedings.

## FACTS

Appellant Buck filed an application for disability insurance benefits on June 26, 1984, alleging disability since December 1981. The Secretary denied benefits after a hearing, but this denial was reversed by order of a federal district court on December 10, 1985. The court ordered reconsideration of the case pursuant to revised mental impairment criteria promulgated under section five of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460. On September 25, 1985 Administrative Law Judge (ALJ) F.J. Howell issued a recommended decision finding Buck disabled as of August 1, 1985, based on a combination of mental and physical impairments. Specifically, Howell found "claimant has severe intervertebral disc disease with a history of a cervical spine fusion and degenerative arthritis, a major affective disorder, depression and a personality disorder". (Tr. 213) Buck then filed a notice contesting the disability onset date. The Appeals Council responded by remanding the case for a supplemental hearing and new decision. On December 2, 1987, ALJ Newbern Chambers issued a new recommended decision denying benefits. This opinion was adopted by the Secretary, and subsequently affirmed by the district court below. This appeal followed.

Buck is a forty-five year old woman with a ninth-grade education and past relevant work experience as a waitress. Her non-mental problems include a wide assortment of physical ailments which are fully and adequately discussed in the opinions of the District Court and ALJ Chambers. Because we accept the findings of the Secretary with regard to these physical problems of Buck we decline to list these ailments in this opinion and instead incorporate by reference the relevant portions of the opinions of the District Court and Secretary. The ALJ found that these impairments resulted in claimant being "unable to perform her past relevant work as a waitress". (Tr. 181). The ALJ also found that although these limitations prevented Buck from engaging in any heavy or strenuous physical activities, she did "retain the residual functional capacity, on an exertional basis, for at least light work activities." (Tr. 176)

Buck was also found to suffer from mental impairments. Because the ALJ's find-

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Oren Harris, United States District Judge for the Western District of Arkansas.

ings with regards to these disorders are problematic this aspect is discussed in detail.

A series of two psychological evaluations and one psychiatric examination was conducted on Buck. The first of these examinations was performed by Dr. Douglas Stevens on January 15, 1986. Stevens conducted a number of tests on Buck including the Wonderlic Personnel Test, the Beck Depression–Hopelessness Inventory, the Symptom Check List–90, the Minnesota Multiphasic Personality Inventory, the Crawford Dexterity Test, the Valpar Simulated Assembly Work Sample and the Valpar Upper Extremity Range of Motion Work Sample. Based on these tests, and his examination of Buck, Stevens concluded that Buck suffered from:

> major depression, a schizoid personality disorder and psychological factors affecting physical condition, the latter condition interacting with her physical pain. * * * She shows a pervasive loss of interest in almost [sic] activities, sleep disturbance psychomotor agitation, decreased energy, feelings of worthlessness, difficulty concentrating and thoughts of suicide. She also displays a significant personality disorder (12.08) with pathologically inappropriate hostility, seclusiveness, persistent disturbance of mood * * * and intense and unstable interpersonal relationships with impulsive loss of emotional control * * *. These emotional impairments result in functional impairments * * *. There is a moderate restriction of activities of daily living, but marked difficulties in maintaining social functioning. She displays frequent deficiencies of concentration, persistence and pace, resulting in failure to complete tasks in a timely manner. She also displays deterioration in a work-like setting, resulting in an exacerbation of symptoms and a withdrawal from the situations. Based upon these factors I believe that this lady * * * is vocationally disabled at this time. I would strongly recommend that she involve herself in an ongoing therapeutic treatment pro-

gram, utilizing both chemotherapy and counseling.

(Tr. 332).

The second examination was a two hour evaluation conducted by Dr. Vasilos on August 18, 1987. Vasilos made no conclusions regarding the existence of major depression or other affective disorders. Instead, he conducted tests on Buck which would indicate the existence of an organic or psychotic brain disorder, of which he found none. In general Vasilos gave Buck a positive report, although he did, based on the tests he performed and his observations of Buck, find that she may have some limitations in dealing with work stresses, maintaining attention and concentration, recalling instructions, behaving in an emotionally stable manner, relating predictably in social situations and demonstrating reliability. He did not conclude that any of these problems would be disabling. (Tr. 470–474)

Buck's final examination was performed by Dr. Eugene Watermann on September 15, 1987. The record does not indicate if Watermann conducted any tests on Buck during his examination or the length of this examination. Watermann concluded that Buck suffered from untreated depression. Using DSM–III (*American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Third Edition* (1980)) nomenclature Watermann Diagnosed Buck's condition as being:

> [b]etween Major Depressive Illness and Dysthymic Disorder. The depression is not severe at this time and has been long standing. I think she would most properly disgnosed (sic) as Dysthymic Disorder. * * * This is a woman who says her disability is due to her arthritis and her heart problem and not due to her mental problems, and I agree with her. I think she is suffering from an untreated depression and she is in need of treatment and the prognosis for her responding to treatment is good. I read Dr. Doug Stevens' report and agree that she is depressed. However. I think her

**454**

prognosis with treatment and medication is good. (Tr. 480).

ALJ Chambers, based on his review of these reports, found that due to the "lack of other credible evidence to corroborate the existence of a severe mental impairment, Dr. Stevens' report is afforded very little, if any weight as to credibility." (Tr. 179). Chambers also concluded that: "there is little or no medical evidence of a significant emotional impairment" (Tr. 178); "the emotional disorder suffered by the claimant does not significantly compromise her ability to perform basic work-related activities at the light exertional level" (Tr. 179); "[t]here are no episodes of deterioration or decompensation in a work setting documented" (Tr. 179); and "[t]he claimant retains the residual functional capacity for a full range of light work." (Tr. 181).

However, Chambers also found that: Buck had been prescribed Ativan, a powerful anti-anxiety drug (Tr. 178); "[t]here are also some indications of difficulties in maintaining social functioning" (Tr. 179); "[h]er ability to tolerate stress is limited" (Tr. 179); and that Buck could perform "most routine unskilled light work which requires little personal interaction with virtually no decisionmaking responsibility" (Tr. 180).

Based on these findings and his findings on physical impairments Chambers then determined that Buck was not disabled. In doing so he recognized that because Buck had established that she no longer could perform her former job the burden was on the Secretary to establish that there was substantial gainful employment available which Buck could perform. To meet this burden Chambers employed the Medical–Vocational Guidelines commonly referred to as the "grid". No vocational expert was called. Using these Guidelines Chambers found that Buck was not disabled. The Secretary adopted the decision of the ALJ as its final decision.

## DISCUSSION

In reviewing social security cases courts are to determine whether the decision of the Secretary is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (1982). "A notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole'". *Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir.1989). Reviewing under the "substantial evidence on the record as a whole" standard requires that the court "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987).

Appellant challenges the decision of the Secretary on four grounds. She argues that: (1) the Secretary was required to retain the services of a vocational expert to establish that there was work available to appellant; (2) the Secretary's credibility determinations regarding appellant were inadequate; (3) the Secretary failed to consider the combined impact of all the appellant's impairments; and (4) the Secretary's findings are not supported by substantial evidence on the record as a whole.

■ It is established law that once a claimant establishes an inability to return to her previous work the burden of proof is shifted to the Secretary to show, by substantial evidence, that there is other work in the national economy that she could perform. *Holland v. Heckler*, 768 F.2d 277 (8th Cir.1985). In cases such as this, where claimant suffers from a combination of exertional and nonexertional impairments, the Secretary may fulfill this burden by reference to the Medical–Vocational Guidelines only if the nonexertional impairments do not "diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." *Thompson v. Bowen*, 850 F.2d 346, 349–50 (8th Cir.1988). Conversely, if the nonexertional impairments would diminish the claimant's ability to perform the full range of activities then the Secretary can meet its burden only through the production of expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics. *Id.*

In this case the ALJ concluded that appellant's capacity for the full range of light work has not been significantly compromised by her nonexertional limitations. We find that this conclusion is not supported by substantial evidence for two distinct reasons.

First, our review of the ALJ's review of the medical evidence introduced concerning Buck's mental impairments indicates that the ALJ erroneously concluded that Dr. Vasilos' and Dr. Stevens' reports were in substantial conflict. As we have already pointed out the thrust of Dr. Vasilos' and Dr. Stevens' evaluations were aimed at differing types of mental impairments; Stevens' report concerned with affective disorders, and Vasilos' investigation aimed at organic dysfunctions. Thus, the Vasilos report makes no pretense of concluding whether, as Dr. Stevens concludes, Buck suffers from Major Depression or other affective disorders. Vasilos did complete and attach to his report a standard Social Security Administration Form indicating his assessment of Buck's ability to do work-related activities in which he came to conclusions at odds with Stevens. However, the preamble to this form clearly states that such conclusions are to be "BASED ON YOUR EXAMINATION". (Tr. 473) Thus, as Vasilos did not investigate the extent of any affective disorders his conclusions concerning Buck's impairments are not in actual conflict with Stevens', because Stevens' conclusions are made with such disorders in mind.

Thus only two reports exist in the record which supply substantial evidence regarding Buck's affective mental impairments, Stevens' and Watermann's. We find, however, that contrary to the views of the ALJ, these reports are in agreement on several key points. For example, Watermann agreed with Stevens that Buck was suffering from "untreated depression" and that this disorder "has been long standing." Indeed, Watermann plainly stated that he had "read Dr. Doug Stevens' report and agree that she is depressed". Watermann did disagree with the level of depression, but even this was in somewhat couched terms

with him diagnosing her as being "[b]etween Major Depressive Illness and Dysthymic Disorder", as compared to Stevens' assessment that she suffered "major depression". Dysthymic Disorder carries many of the same effects and symptoms of Major Depression, with the exception of delusions or hallucinations, albeit of a more limited nature. *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Third Edition* 221 (1980).

Accordingly, we find that the ALJ exceeded his authority in affording Stevens' report "very little, if any weight as to credibility." The couched terms Watermann uses in explaining his disagreements with Stevens do not warrant such cavalier treatment. Especially, when the record does not indicate any independent testing by Watermann. Thus, we find it necessary to remand this portion of the Secretary's decision for a more accurate assessment of the limitations imposed on Buck by her mental impairments.

The ALJ's second error was in using the Vocational–Guidelines to establish the existence of work for appellant after determining that appellant did suffer some nonexertional impairments. The ALJ justified the use of the Guidelines grid based on his conclusion that jobs at the light exertional level, as contemplated in the Guidelines, require little personal interaction, no decision making responsibility, and low levels of stress—the impairments he recognized Buck as suffering. The ALJ, however, produced no authority for this conclusion. Accordingly, "[w]e are compelled to conclude that this finding, stated without supporting authority of any kind, is not supported by substantial evidence." *Asher v. Bowen*, 837 F.2d 825, 827–28 (8th Cir.1988) (Secretary's conclusion that sedentary jobs are performed in environments of clean temperate air is without basis unless supporting authority produced). The Secretary must rely on evidence other than the grid, such as a vocational expert, to establish that work exists for a claimant suffering nonexertional impairments unless he first establishes through substantial evidence that these impairments do not dimin-

ish her ability "to perform the full range of activities listed in the Guidelines." *Thompson*, 850 F.2d at 349–50. Because this was not done in this case the Secretary has not met his burden and we must reverse.

Although appellant raises additional challenges to the decision of the Secretary we find that the Secretary's findings on these issues are supported by substantial evidence in the record as a whole. This holding, however, does not extend to the ALJ's apparent dismissal of past suicidal attempts by Buck or to the other conclusions regarding mental impairments and difficulties. These aspects of the ALJ's decision must be reviewed in total. Further, we remind the ALJ that he has a duty to seek out the truth in these matters. This is not an adversarial process.

## CONCLUSION

The judgment is reversed, and the cause remanded to the district court with instructions to remand to the Secretary for further proceedings consistent with this opinion.