62 F.3d 1418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eileen M. RAWLINS, Plaintiff-Appellant,
v.
Donna SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-1736.
 United States Court of Appeals, Sixth Circuit.
 Aug. 7, 1995.
 
 Before: MILBURN and NORRIS, Circuit Judges; and BECKWITH, District Judge*
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Eileen M. Rawlins appeals the district court's grant of summary judgment, affirming the Secretary's denial of her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. Sec. 405(g), et seq. On appeal, the issues are (1) whether substantial evidence supports the decision of the administrative law judge ("ALJ") that claimant was not entitled to disability insurance benefits, and (2) whether substantial evidence supports the decision of the ALJ that the onset date of claimant's disability was September 1989, rather than an earlier date. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant filed an application for supplemental security income ("SSI") benefits on August 19, 1987, and an application for Social Security disability insurance benefits ("DIB") on August 21, 1987, alleging that she became disabled on February 23, 1981, due to tendinitis. These applications were denied both on initial review and reconsideration.
 
 
 3
 Following an administrative hearing on November 1, 1988, an ALJ issued a decision on December 15, 1988, finding that claimant was not disabled because despite her impairment she was capable of performing a significant number of sedentary-level jobs. Claimant appealed the denial of benefits to the Appeals Council, which remanded her case to the ALJ for further proceedings, including additional discussion of the medical evidence as well as more specific credibility findings.
 
 
 4
 After a supplemental hearing was held on April 9, 1990, the ALJ issued a decision on April 23, 1990, again finding that claimant was not disabled because, despite her impairments, she could perform a significant number of sedentary-level jobs. When the Appeals Council declined claimant's request for further review, the ALJ's decision became the final decision of the Secretary.
 
 
 5
 Subsequently, however, claimant sought judicial review of the Secretary's final decision in the district court under 42 U.S.C. Sec. 405(g). On February 14, 1992, the district court reversed the Secretary's decision and remanded the case for additional administrative proceedings, especially additional evaluation of claimant's alleged mental impairment.
 
 
 6
 Thereafter, on June 17, 1992, a third administrative hearing was held. On October 30, 1992, the ALJ issued a decision finding that claimant was disabled as of September 15, 1989, but not prior to that date. Because it was undisputed that claimant's insured status for DIB benefits expired on December 31, 1986, the ALJ found that claimant was entitled to SSI benefits commencing September 1989, but not entitled to DIB benefits.
 
 
 7
 After the Appeals Council denied claimant's request for review on May 11, 1993, claimant again sought judicial review by the district court. The matter was referred to a magistrate judge, who on February 24, 1994, issued his report and recommendation that the district court affirm the ALJ's decision that claimant was disabled as of September 1989, but not prior to that date. After de novo review of the magistrate judge's report and recommendation in light of claimant's timely objections, the district court entered an order on May 23, 1994, adopting the magistrate judge's report and recommendation and granting summary judgment in favor of the Secretary. This timely appeal followed.
 
 B.
 
 8
 Claimant was born on July 28, 1936, and was 50 years of age at the time her insured status for DIB benefits expired in December 1986. She completed the ninth grade in school and had taken secretarial classes. Her past work has been primarily as a secretary and a bookkeeper, although she also worked as a cashier. Prior to her disability, she was employed as a bookkeeper for Michigan State University and as a secretary for the Michigan Department of Social Services.
 
 
 9
 In February 1981, claimant underwent surgery for complaints related to right elbow pain, attributed to chronic right lateral epicondylitis (tennis elbow). In May 1982, Dr. Ferre, the orthopedic surgeon who performed claimant's surgery, opined that as of the date of his last examination of claimant, October 15, 1981, she could return to work that did not require heavy lifting or prolonged twisting of her elbow. R. 195.
 
 
 10
 Records from April 1984, indicated that claimant's grip improved in response to physical therapy; neurological tests performed the following month showed normal results. In August 1985, Dr. Donald Paarlberg, an orthopedic surgeon, examined claimant. He stated that she did not exhibit "much in the way of objective findings," and concluded that claimant could return to some type of light secretarial work. R. 222.
 
 
 11
 In January 1987, Dr. Malcolm Johnston, claimant's treating physician, completed a statement in which he concluded that claimant could sit for seven hours in an eight hour day; never lift or carry up to five pounds; never bend, crawl, or climb; and was permanently incapacitated for work. R. 223-225. However, in June 1987, Dr. Johnston concluded that claimant could not perform her past work, but could perform work that did not require the use of her right arm. R. 227. Dr. Johnston made a similar assessment in August 1987, R. 232, and, in November 1988, he stated that claimant was disabled from work that includes repetitive tasks of the right arm, R. 380.
 
 
 12
 In July 1987, claimant was examined by Dr. Nathan Gross, a specialist in physical medicine and rehabilitation, who reported that she complained of pain and limited motion in her right shoulder and cervical spine, in addition to her complaints concerning her elbow and hand. Dr. Gross characterized claimant's complaints as largely subjective, and recommended that she return to work in an unrestricted fashion. R. 318-24; 354-55. In January 1988, Dr. Stephen Newman examined claimant and described similar subjective complaints. He diagnosed traumatic tendinitis and capsulitis post-operative, of the right elbow; traumatic conversion symptomatology involving right upper extremity; and, post-traumatic stress syndrome, with associated depression. R. 247.
 
 
 13
 In November 1989, claimant began treatment with Drs. Ike and O'Rourke, rheumatologists, for complaints of neck, shoulder, and low back pain. They diagnosed chronic right extensor tendinitis at the elbow and secondary fibromyalgia, and also stressed the "need for [claimant] to remain socially and physically active." R. 389. Further, in a report dated January 1990, Drs. Ike and O'Rourke described claimant as exhibiting "significant fibromyalgia" and probable depression and noted that "her symptoms increased after 1987." R. 607-08.
 
 
 14
 In addition, claimant was examined by Dr. Clark Conant in September 1990, who opined that claimant was unable to lift any weight, and was unable to stand, walk, or sit for more than one hour during each work day. X-rays taken in January 1989 and January 1991, showed degenerative changes in claimant's right shoulder and throughout her spine.
 
 
 15
 A psychological evaluation of claimant was performed on March 31, 1990. As a result of the evaluation, the psychologist, Robert Maloney, thought that a somatoform pain disorder was "a diagnostic consideration." R. 602. In April 1990, Dr. John R. DeQuardo indicated that claimant was not significantly depressed but had an adjustment disorder. R. 603. Dr. DeQuardo also indicated that medication had been prescribed for the adjustment disorder.
 
 
 16
 Craig S. Brown, Ed. D., evaluated claimant on June 14, 1991. He diagnosed "major depression, single episode, moderate," and stated that claimant's prognosis was guarded. Finally, J. Keith Ostien, a psychologist, evaluated claimant on February 10, 1992. He diagnosed severe dysthymia. R. 662.
 
 
 17
 Dr. Jeffrey Andert testified at the June 1992 administrative hearing as a medical advisor. Dr. Andert testified that the results of tests performed in March 1990, showed that claimant was experiencing a somatoform disorder; namely, claimant was experiencing symptoms resulting from psychic or mental factors which resembled those of organic diseases. Dr. Andert further testified that the results of a February 1992 psychological evaluation of claimant were consistent with the findings of the tests performed in March 1990.
 
 
 18
 Dr. Andert stated that the only evidence relating to claimant's mental or emotional status prior to March 1990 were general statements made by Dr. Newman in a report of January 1988. Further, Dr. Anders testified that he was unable to conclude that claimant's complaints of pain in 1986 were produced by or related to her somatoform disorder because her treating physician at that time attributed her complaints to the results of physical impairments.
 
 
 19
 Based upon the medical evidence, Dr. Andert concluded that the record contained no documentation showing that claimant suffered from a somatoform disorder until March 1990. Dr. Andert further concluded that based upon the severity of claimant's condition in March 1990, her somatoform disorder would have developed at least six months earlier; namely, September 1989. Dr. Andert stated that although he had a suspicion that claimant's somatoform disorder may have developed prior to September 1989, he would not be comfortable reaching a conclusion that the somatoform disorder existed prior to that time.
 
 II.
 
 20
 Pursuant to 42 U.S.C. Sec. 405(g), this court has jurisdiction to review the Secretary's decisions. Our review of the Secretary's decision is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards in reaching her conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert denied, 461 U.S. 957 (1983).
 
 
 21
 In determining whether the Secretary's factual findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. See Born v. Secretary of Health and Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If supported by substantial evidence, the Secretary's decision must be affirmed even if a reviewing court would decide the matter differently. See Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).
 
 
 22
 A social security disability claimant bears the ultimate burden of proof on the issue of disability. See Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir. 1984). However, once a claimant makes out a prima facie case that she cannot perform her usual work due to her disability, the burden of proof then shifts to the Secretary to show that there is work in the national economy which the claimant can perform. Martonik v. Heckler, 773 F.2d 236, 239 (8th Cir. 1985); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The Secretary must prove that having considered the claimant's present job qualifications, such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications that the claimant retains the capacity to perform a different kind of job. See Young v. Secretary of Health and Human Servs., 925 F.2d 146, 148 (6th Cir. 1990).
 
 
 23
 On occasion, the Secretary can satisfy her burden by relying on the medical vocational guidelines. Young, 925 F.2d at 148-49. A vocational expert is generally consulted where a claimant has significant non-exertional limitations. See Buck v. Bowen, 885 F.2d 451, 455 (8th Cir. 1989); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).
 
 B.
 
 24
 Claimant argues that the Secretary's decision that she is not entitled to DIB benefits is not supported by substantial evidence. She further argues that the Secretary's finding that she was disabled as of September 1989 but not earlier, is not supported by substantial evidence.
 
 
 25
 In this case, it is undisputed that claimant's insured status for DIB benefits expired on December 31, 1986. Furthermore, the Secretary has already concluded that claimant is disabled. Thus, the issue presented by this case is whether substantial evidence supports the Secretary's finding that the onset date of claimant's disability was September 1989.
 
 
 26
 (1)
 
 
 27
 Claimant argues that the ALJ erred by imposing an improper standard of proof in assessing her psychological impairments. Specifically, she asserts that the ALJ erred by requiring "definitive" evidence of disability. Brief of Appellant at 10-12. According to claimant, in his questioning of Dr. Andert, the medical advisor, the ALJ imposed an "unrealistically heightened standard of proof" with respect to her mental impairment. Brief of Appellant at 11. Claimant asserts that the ALJ's questioning of the medical advisor was error because it required that she provide conclusive evidence of a mental disability, whereas the appropriate standard "is simply a preponderance of the evidence." Brief of Appellant at 11.
 
 
 28
 A claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." Wyatt v. Secretary of Health and Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). "The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings." Cook v. Heckler, 750 F.2d 391, 393 (5th Cir. 1985). Further, to establish entitlement to DIB benefits the claimant has the burden of demonstrating that she became disabled prior to the expiration of her insured status. Milam v. Bowen, 782 F.2d 1284, 1286 (5th Cir. 1986).
 
 
 29
 In relying on the medical advisor's testimony, the ALJ did not hold claimant to an "unrealistically heightened standard of proof" regarding her mental impairment. Further, given the dearth of medical evidence concerning the existence of a mental impairment prior to March 1990, substantial evidence does not exist in the record to support a finding of disability prior to September 1989.
 
 
 30
 In his testimony at the third administrative hearing, Dr. Anders testified that the record with regard to claimant's mental impairment would support a finding of "a somatoform pain disorder." R. 483. Dr. Andert further testified that given the level of claimant's impairment, "it would be quite difficult for someone to maintain employment." R. 487.
 
 
 31
 Dr. Andert noted that claimant reported in 1980 that she was depressed. However, Dr. Andert stated that "there really is no documentation that would support an affective disorder until the psychological evaluation in March of 1990."[1] R. 490. Dr. Andert also stated that given the level of severity of the somatoform disorder documented in the March 1990 evaluation, it would have taken at least six months for the disorder to develop to that extent. Finally, he opined that although the somatoform disorder may well have been present prior to September 1989, there is no support in the record that it was at the same severity as it was in March 1990. R. 490.
 
 
 32
 The rules used to determine the onset date of a disability are found in Social Security Ruling ("SSR") 83-20 (Cum. Ed. 1983). SSR 83-20 states that "[i]n some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." SSR 83-20 at 111. Thus, the ALJ did not select March 1990, the date claimant's mental impairment was first documented, as the onset date for her disability. Rather, he relied on Dr. Andert's expert opinion that the documented mental impairment dated back to September 1989. When the ALJ's finding is considered in light of the scarcity of evidence concerning claimant's mental or emotional condition prior to March 1990, and the fact that none of the mental health professionals who examined claimant after March 1990 ever opined that the onset date of claimant's mental impairment was prior to September 1989, his reliance on Dr. Andert's testimony is reasonable. Therefore, we conclude that substantial evidence supports the ALJ's conclusions that the onset date of claimant's disability was September 1989.
 
 
 33
 (2)
 
 
 34
 Claimant argues that the ALJ erred in finding that there is a significant number of jobs that she could perform given her residual functional capacity. At the third administrative hearing the vocational expert ("VE"), Bob Winborn, responded to a hypothetical assuming that claimant had limited use of her right arm and hand and could only perform jobs of a sedentary nature by identifying 7,000 jobs that she could perform in the southern half of the lower peninsula of Michigan. Likewise, in response to a hypothetical assuming that claimant had limited use of her right arm and hand and could only perform jobs at the light exertional level, the VE identified 3,000 jobs that she could perform in the southern half of the lower peninsula of Michigan. Further, at the second administrative hearing the VE, Asa Brown, identified 40,000 jobs in the southern peninsula of Michigan that claimant could perform at the sedentary level of exertion. Finally, at the first administrative hearing, the VE, James Engelkes, identified 8,000 positions in the clerical industry, and 2,000 positions as a checker in the state of Michigan that could be performed by claimant at a sedentary level of exertion and with the restriction that the right upper extremity was not to be used on a constant and continuous basis. Further, the VE stated that if claimant were limited to a light level of exertion and subject to the restriction that she not use the right upper extremity on a constant and continuous basis, she could perform 20,000 positions in the state of Michigan.
 
 
 35
 Claimant asserts that the ALJ erred in finding that she could perform a significant number of jobs prior to the expiration of her insured status. She also asserts that, as of July 28, 1986, her fiftieth birthday, the ALJ could only find her not disabled if she was capable of performing light-level work. Brief of Appellant at 12-13. She further asserts that the 3,000 light-level jobs identified by the VE at the third administrative hearing did not constitute a significant number of jobs, and, therefore, she should have been found disabled prior to the expiration of her insured status; namely, as of the date of her fiftieth birthday.
 
 
 36
 However, claimant's argument ignores the fact that in finding that "[p]rior to September 15, 1989, the claimant retained the capacity to perform substantial gainful activity of a sedentary, semi-skilled nature, and a light, unskilled nature," R. 442, the ALJ relied on "the testimony of the three vocational experts of record," R. 441. Although the VE at the third administrative hearing identified only 3,000 one-armed light-level jobs that claimant could perform, the VE at the first administrative hearing identified 20,000 light-level jobs that claimant could perform despite the limitations to the use of her right arm, including work as a file clerk, inventory clerk, and information clerk. Moreover, even if the ALJ had chosen to rely on the testimony of the VE at the third administrative hearing, substantial evidence would have supported the ALJ's conclusion that there were a significant number of jobs that claimant could perform at the light exertional level prior to September 15, 1989, because 3,000 jobs are a significant number of jobs. See Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (assuming that 500 of the 1,000 jobs identified by the VE were available to the claimant in the region where she lived, the Secretary has satisfied the burden of showing that claimant could perform other work which exists in "significant numbers" in the region where the claimant lived). See also Hall v. Bowen, 837 F.2d 272, 273, 275-76 (6th Cir. 1988) (1,350 jobs identified by the VE in the regional economy constituted a significant number).
 
 
 37
 Claimant further asserts that the jobs identified by the VE at the third administrative hearing do not constitute substantial gainful activity because they are seasonal. Further, she argues that because of her age and functional limitations, she would not be hired to perform the jobs identified by the VE at the third administrative hearing. Claimant's objection as to the possible seasonal nature of some of the jobs identified by the VE at the third administrative hearing, such as flag person at a highway construction site, ignores the ALJ's express reliance on the testimony of the VEs at the two prior administrative hearings. The 20,000 light-level clerical jobs identified by the VE at the first administrative hearing are not seasonal in nature. Finally, under the Act, the ALJ is not required to determine whether claimant would actually be hired to perform the work identified by the VE. See 42 U.S.C. Sec. 423(d)(2)(A).[2]
 
 
 38
 (3)
 
 
 39
 Claimant also argues that the ALJ applied incorrect vocational rules in applying the Grids as a framework for decision-making in this case. Appellant's brief at 15-16. However, in light of the vocational testimony, the ALJ reasonably used the vocational guidelines as a framework for finding that Claimant was not disabled.
 
 
 40
 In his decision, the ALJ cited vocational rules applicable to both younger individuals and individuals closely approaching advanced age in order to address claimant's age at the times relevant to her application, both before and after her fiftieth birthday in July 1986. Claimant specifically asserts that the ALJ's use of vocational Rule 201.20 was error because the rule "deals only with a 'younger' individual, and therefore is not relevant to the period after her fiftieth birthday on July 28, 1986." Id. at 15. However, in her application for benefits, the claimant alleged that she became disabled as of February 23, 1981, more than five years prior to her fiftieth birthday. Thus, the ALJ's use of Rule 201.20 was not error because claimant herself alleged that she was disabled prior to her fiftieth birthday.[3] Further, the ALJ also cited the vocational rule applying to both sedentary and light level work because claimant was unable to perform the full range of work at either of those two levels.
 
 
 41
 Claimant also argues that the ALJ erred because one of the vocational rules relied on by the ALJ, Rule 201.11, deals with individuals who can perform sedentary work and have transferrable skills. Brief of Appellant at 15-16. Claimant asserts that the ALJ's assumption that she has transferrable skills is contrary to the testimony of the VE at the third administrative hearing. However, claimant's argument ignores the fact that the ALJ relied on the testimony of all of the VEs, and, at the first administrative hearing the VE testified that claimant's acquired skills were transferrable to a significant number of semi-skilled sedentary level jobs. Thus, contrary to claimant's assertion, the ALJ's consideration of her claim for DIB benefits was thorough, not erroneous, and the ALJ's consideration of vocational Rule 201.11 in reaching his decision does not require reversal of the decision.
 
 
 42
 (4)
 
 
 43
 Claimant also argues that the ALJ erred in failing to consider the combined effects of her physical and mental impairments. Brief of Appellant at 19-21. However, as is discussed above, except for a few comments about depression there was no credible evidence that claimant was suffering from a mental or emotional impairment at any time prior to the expiration of her insured status. Moreover, in her brief, claimant has not identified any evidence which would show that she had a medically demonstrable mental or emotional impairment at any time prior to the disability onset date found by the ALJ, September 15, 1989. Thus, contrary to claimant's allegation, the ALJ did not "whipsaw" her by finding that there was no physical basis for her complaints prior to the expiration of her insured status and no evidence of a psychological impairment until well-after the expiration of her insured status. Indeed, the magistrate judge aptly summarized the evidence in this case in his report and recommendation when he stated:
 
 
 44
 The record is clear that it was not until 1987 and 1988, after [claimant's] last date of insured status, that she began to complain of symptoms other than her right arm and began experiencing a manifest depressed mood. [Claimant's] own testimony indicates that her state of depression became worse over the years. She stated she was "slightly depressed" and got teary every couple of weeks in 1986 because she was not working, but she began daily crying spells in 1992. [Claimant] received no psychotropic medication until 1989, and she was not referred to a mental health professional until 1990.
 
 
 45
 Magistrate Judge's Report and Recommendation at 17 (set forth in the Addendum to Appellee's Brief).
 
 
 46
 Thus, substantial evidence supports the ALJ's finding that claimant's complaints of pain and limitations were not fully credible to the extent that she alleged an inability to perform limited ranges of light- and sedentary-level work prior to September 1989.
 
 
 47
 (5)
 
 
 48
 Finally, claimant argues that the ALJ erred in assessing her residual functional capacity. She asserts that although the ALJ found that she was capable of a limited range of light work prior to the expiration of her insured status on December 31, 1986, she was limited to sedentary work and, therefore, should have been found disabled as of her fiftieth birthday, July 28, 1986. Brief of Appellant at 17-19. However, during the period from 1981 through 1987, claimant had no complaints of symptoms in any other part of her body except for her right arm and hand. Furthermore, during this period her doctors described her as capable of returning to work that did not involve excessive use of her right arm. Subsequently, after the expiration of her insured status, claimant began complaining of shoulder and spinal pain. X-rays taken from 1989 through 1991, do reveal degenerative findings associated with her complaints of neck and shoulder pain. Further, claimant's doctors did not mention that she exhibited signs of depression until after the expiration of her insured status, and, not until 1990, more than three years after her fiftieth birthday and the expiration of her insured status, did her doctors refer her for a psychological evaluation. Thus, the ALJ's conclusion that she was capable of a limited range of light work prior to December 31, 1986, is supported by substantial evidence.
 
 
 49
 The ALJ's conclusion that claimant became disabled by September 15, 1989, but not before, is supported by substantial evidence. Because the onset date, September 15, 1989, is nearly three years after the expiration of claimant's insured status for DIB benefits, the ALJ's finding that she is entitled to SSI benefits but not to DIB benefits is supported by substantial evidence.
 
 III.
 
 50
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Dr. Andert was correct in his summary of the evidence. There is very little evidence concerning claimant's mental state prior to March 1990
 
 
 [2]
 42 U.S.C. Sec. 423(d)(2)(A) states:
 An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
 42 U.S.C. Sec. 423 (d)(2)(A) (Supp. 1995) (emphasis added).
 
 
 [3]
 In her brief on appeal, claimant argues that she would "stipulate that this is the date upon which the regulations would first mandate a finding of 'disabled."' Brief of Appellant at 15. Moreover, nowhere in her brief does she argue that the onset date of her disability was at any time prior to her fiftieth birthday, July 28, 1986. Thus, it appears that claimant has abandoned any argument that she became disabled prior to July 28, 1986. See, e.g., Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir. 1991), cert. denied, 503 S. Ct. 939 (1992)