**Marva YOUNG, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

No. 90–3110.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 13, 1990.

Decided Dec. 12, 1990.

Arthur P. Anninos (argued), Kleinhaus & Bell, Cincinnati, Ohio, for plaintiff-appellant.

Karen Smigielski, Grace M. Kim (argued), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill., Nicholas J. Pantel, Asst. U.S. Atty., Office of the U.S. Atty., Cincinnati, Ohio, Joseph E. Kane, Asst. U.S. Atty., Office of the U.S. Atty., Columbus, Ohio, for defendant-appellee.

Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Marva Young, appeals the Secretary of Health and Human Services', defendant-appellee's, determination that she is not disabled and not entitled to disability insurance benefits and supplemental security income.

## I.

Claimant Young was born on March 23, 1940. She has a high school education and completed two years of furniture upholstery trade school. Claimant worked as an automatic machine operator and assembler for Ford Motor Company from August, 1983 to November 22, 1985. Claimant filed application for a period of disability, disability insurance benefits, and supplemental security income on April 14, 1987, alleging a disability onset date of November 22, 1985. Her applications were denied initially and upon reconsideration. Claimant requested a hearing before an Administrative Law Judge (ALJ), which was held on February 2, 1988. In a decision rendered on March 25, 1988, the ALJ found that claimant was not disabled. The Appeals Council denied Young's request for review in spite of the fact that the record had been supplemented by a letter from a psychiatrist, Dr. Warner. The decision of the ALJ thus became the final decision of the Secretary. Pursuant to 42 U.S.C. § 405(g), claimant appealed to the United States District Court for the Southern District of Ohio. A United States Magistrate prepared a report and recommendation upholding the denial of benefits. The district court adopted the magistrate's recommendation and on April 17, 1989 issued an order affirming the Secretary's denial of benefits.

## II.

This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g), which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)(1)(A). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R.

§§ 404.1520(b), 416.920(b). In the present case, the ALJ determined claimant had not worked since 1985. Next, if the claimant is not found to have an impairment which significantly limits her ability to work (a severe impairment), then she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). Since the ALJ found that the medical evidence established that claimant had a severe impairment due to a muscular or ligamentous back problem, a history of tendinitis of her elbows and arthritis of her fingers, a mild to moderate dysthymic disorder and psychological factors affecting physical condition or a chronic pain syndrome, the ALJ concluded that claimant suffered from a severe impairment, and further inquiry was necessary. At the next stage of the analysis, if the claimant is not working and has a severe impairment, it must be determined whether she suffers from one of the "listed" impairments. 20 C.F.R. §§ 404.1520(d), 416.-920(d). If so, benefits are owing without further inquiry. In the present case, the ALJ found that Young did not suffer from one of the listed impairments. In such a case, assuming the individual has previously worked, the Secretary must next decide whether the claimant can return to the job she previously held. 20 C.F.R. §§ 404.-1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents her from engaging in her particular occupation," the claimant establishes a prima facie case of disability. *Hephner v. Matheiws,* 574 F.2d 359, 361 (6th Cir.1978). In the instant case, the ALJ found that Young was not capable of returning to her particular occupation.

At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. *Allen,* 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1953–54, 76 L.Ed.2d 66 (1983). The

Secretary's burden can, on occasion, be satisfied by relying on the medical vocational guidelines. *Kirk,* 667 F.2d at 528–29. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2.

In the present case, the ALJ found that claimant's allegation of constant severe back pain radiating to her left leg and up into her cervical spine was unsupported by the presence of objective medical abnormalities that could produce symptoms of the severity she described, was inconsistent with the type of medical treatment and medications she received, was contrary to her appearance of apparent comfort at the hearing, and was not credible. Therefore, the ALJ determined that claimant had the physical residual functional capacity to perform unskilled sedentary work. 20 C.F.R. § 404.1567(a). The ALJ considered claimant's functional limitations with respect to the medical reports concerning the severity of her mental impairments and determined that nonexertional mental limitations included the need to avoid highly stressful work, but that her capacity for a wide range of sedentary work was not significantly compromised by these nonexertional mental limitations. The ALJ therefore applied the medical vocational guidelines, otherwise known as the "grid." Based on an exertional capacity for sedentary work and on claimant's age, education and work experience, 20 C.F.R. § 404.1569 and Grid Rule 201.21, Pt. 404, Subpt. P., App. 2, directed a conclusion of "not disabled."

Following the direction of 20 C.F.R. § 404.1520(a), the ALJ next considered claimant's additional nonexertional limitations, which reduced her capacity for a full range of sedentary work by limitations on the use of her hands for repetitive grasping and by her limited stress tolerance. Because claimant could not perform a full range of sedentary work, her characteristics did not precisely fit the pattern of the medical vocational guidelines and the ALJ was required to make a nonguideline determination. *Kirk,* 667 F.2d at 531. The testimony of a vocational expert was required to satisfy the Secretary's burden of proof regarding the availability of jobs which claimant could perform. 20 C.F.R.

§ 404.1566(e); *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). A vocational expert testified at the hearing that there are a significant number of jobs in the national economy which claimant could perform given her physical and mental limitations. Examples of such jobs are cashier, telephone solicitor, telephone interviewer and order caller. More than 40,000 of these positions existed in the region where claimant resided. Because there are a significant number of jobs in the national economy which claimant could perform, the ALJ determined that claimant was not disabled. §§ 404.-1520(f), 416.920(f).

### III.

■ On appeal to the district court, claimant contested the Secretary's finding that her allegations of severe disabling pain caused by her lower back injury were not supported by objective evidence. On appeal to this court, claimant essentially has switched her argument and states that her alleged severe disabling pain is not caused by her back injury, but is psychological. Young cannot raise an issue before the court of appeals that was not raised before the district court. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Ralph Schrader, Inc. v. Diamond International Corp.*, 833 F.2d 1210, 1214 (6th Cir.1987). Claimant also alleges that the magistrate failed to consider a key psychiatric report, the report of Dr. Warner. This assertion is patently frivolous. In his decision, the magistrate discussed Dr. Warner's findings, stating that the report was merely cumulative and therefore was not "material" within the meaning of 42 U.S.C. § 405(g) and contained nothing that would cause the ALJ to change his opinion. Therefore a remand to consider this report was unnecessary. *Oliver v. Secretary of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986). For these reasons, the decision of the district court upholding the Secretary's denial of disability benefits is hereby affirmed.

### IV.

Even if this court were to address the merits of claimant's allegations of disabling psychological pain, claimant would not prevail.

### A.

■ Claimant first asserts that her complaints of pain stemming from psychological sources meet the requirements of Section 12.07 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. I, § 12.07 (1989).

Section 12.07 sets forth the criteria required to establish a mental disability caused by a somatoform disorder. Somatoform disorders result from "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." The section states that:

The required level of severity for these disorders is met when the requirements in *both* A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. Vision; or

b. Speech; or

c. Hearing; or

d. Use of a limb; or

e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or

f. Sensation (e.g., diminished or heightened); or

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

B. Resulting in three of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work setting or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (1989) (emphasis added). Young does not meet the requirements of the "B" criteria.

Activities of daily living include cleaning, shopping, cooking, maintaining a residence, using the telephone and caring for one's grooming and hygiene. 20 C.F.R. Pt. 404, Subpt. P, § 12.00(C)(1). The evidence of record shows that Young is able to do a variety of daily activities. Young takes care of her personal needs and finances, she dusts, washes dishes, goes grocery shopping, cooks, reads, watches television for several hours, drives an automobile and runs various errands, and she occasionally dines out and goes to the movies. We find that this evidence amply supports the Secretary's finding that Young's daily activities are no more than slightly restricted.

Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with others, including family members, friends, and merchants. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2). There is no indication that claimant's social functioning is more than *slightly* impaired. Young has good relationships with her children, she enjoys talking to her friends on a daily basis, and enjoys dining out with family and friends and going out to movies. Young also enjoys occasionally dating. Moreover, Dr. Hellkamp, a clinical psychologist, found that Young had a good ability to relate to others, including fellow workers, the public, and supervisors. Given this evidence, the Secretary reasonably determined that Young's social functioning was, at most, slightly restricted.

Concentration, persistence, and pace, refer to the "ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3). Dr. Warner was the only doctor who found that Young had "difficulty concentrating." Dr. Hellkamp found that her abilities to maintain attention and concentration were good. Dr. Hellkamp concluded that Young had a good ability to understand, remember, and carry out complex and detailed job instructions, and an unlimited ability to understand, remember and carry out simple job instructions. Moreover, Young herself denied any cognitive, recent memory, or concentration deficits. Thus, the Secretary's finding that Young seldom experienced deficiencies of concentration, persistence, and pace is supported by substantial evidence.

Deterioration or decompensation in work or work-like settings refers to the "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The record is devoid of any evidence that Young experienced deterioration or decompensation in work or work-like settings. Thus, the Secretary reasonably found that Young had no episodes of deterioration or decompensation in work or work-like settings. Consequently, Young did not meet the requirements of Section 12.07 of the Listing of Impairments.

**B.**

Claimant also alleges that she is disabled by pain that has psychological, rather than musculoskelatal, origins. Claimant bases her evidence of disabling psychological pain on two reports—a report of the Jewish Hospital Pain Center and a psychiatric exam of Dr. Warner.

■ We review appellant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be ob-

jective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986).

Dr. Warner's report stated that Young was disabled by post-traumatic stress disorder precipitated by the gunshot wounds she received when her former husband tried to kill her. Dr. Warner did not conduct a mental status exam or any psychological or psychiatric tests in forming her opinion. The opinion of a treating physician must be based on sufficient medical data. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). Dr. Hellkamp, a clinical psychologist hired by the Social Security Administration, opined that claimant suffered from a dysthymic disorder, mild to moderate, psychological factors affecting physical condition, and insomnia. His opinion was supported by mental examination findings and by the psychological tests which he administered (MMPI, Rorschach). Dr. Hellkamp nevertheless found that although stress affected the intensity of claimant's pain, she retained the ability to work with a low level of stress. The Secretary reasonably resolved the conflict in the evidence and rejected Dr. Warner's opinion, which was not supported by test results. *Perales*, 402 U.S. at 400, 91 S.Ct. at 1426–27. This court has determined that a claimant must do more to establish a disabling mental impairment than merely show the presence of a dysthymic disorder. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir.1988). A dysthymic disorder, which is a chronic disturbance of mood involving either depressed mood or loss of interest in all, or almost all, usual activities and pastimes, but is not of sufficient severity and duration to meet the criteria for a major depressive episode, does not constitute objective evidence of disabling pain caused by a psychological disorder.

The "multidisciplinary" examination conducted by the Jewish Hospital Pain Center also fails to provide objective evidence of a condition of disabling psychological pain. The report stated:

A temporal analysis of the patient's pain experience throughout a typical day, on a scale of zero to ten with ten being unbearable pain, is reported by the patient as follows: upon arising at 9:00 a.m. her pain level is between 0 and 1. By noon time her pain escalates to level 6, and by late afternoon it further escalates to level 8. The patient stated that her pain level during the evening ranges between 8 and 9. She retires to sleep at 11:00 p.m. with a level 9 pain. Of interest was that she reported only needing 15 minutes to fall asleep. However, she further reported a disrupted sleep pattern in that she will invariably awaken at least three times during the night with a level 3 pain. During these awakenings she uses the bathroom and drinks a glass of water. She typically needs only 10 minutes to fall back asleep after each awakening. Ms. Young's completed activity diary for a typical day shows her as sitting for 5 hours, standing and walking for 5 hours; while reclining to sleep for 10 hours and reclining to rest for 4 hours. The only word the patient used to describe her present pain was "radiating".

However, this report is based on claimant's subjective complaints. Moreover, a physical examination conducted by the Center showed that Young's reflexes were normal, her manual muscle testing revealed normal strength, and her sensation was grossly intact to light touch except for a "subjective decrease" to light touch diffusely over the left upper and lower extremities in a nondermatomal pattern. Furthermore, the examiner stated that Young had a strong tendency to exaggerate her symptoms.

Because claimant fails to provide objective evidence of her alleged disabling pain having psychological origins, the first prong of the *Duncan* test is not met.

Because this issue was not raised below, the Secretary did not make a specific finding on this matter. However, because claimant's allegations of disabling psychological pain are not supported by objective

evidence in the record, this court, in the alternative, rejects this argument on the merits and hereby affirms the decision of the Secretary that claimant is not disabled.