98 F.3d 1341
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elbert COLWELL, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-6179.
 United States Court of Appeals, Sixth Circuit.
 Sept. 30, 1996.
 
 Before: MARTIN, KRUPANSKY, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Elbert Colwell appeals the district court's order affirming the Commissioner's decision to deny Colwell social security disability benefits. The district court concluded that the Commissioner's decision was supported by substantial evidence in the record, and therefore declined to reverse the denial of benefits. For the reasons set forth below, we AFFIRM.
 
 
 2
 Colwell was born on July 23, 1941, and is now fifty-five years old. Colwell is a former strip mine laborer with a tenth grade education. However, Colwell's reading skills have been evaluated as equivalent to a fifth grade level, and his mathematical skills are rated as equivalent to a third grade level. He suffers from hypertension, chronic obstructive pulmonary disease, anxious mood, psychosocial stressors, borderline intelligence, marginal literacy, back pain, and chest pain.
 
 
 3
 Colwell filed applications for disability benefits on August 18, 1987. A hearing was held before an administrative law judge, who denied him benefits. On Colwell's request for review, the administrative appeals council vacated the administrative law judge's decision, and remanded the case for additional proceedings. After a second hearing, the administrative law judge issued a decision on May 31, 1991, again denying Colwell benefits. The appeals council declined review, and the administrative law judge's decision became the final decision of the Commissioner.
 
 
 4
 On appeal to the district court, the court vacated the administrative law judge's decision, and remanded Colwell's claim for further proceedings. Although the district court took no issue with the administrative law judge's findings as to Colwell's physical capabilities, it remanded for further consideration concerning his mental status. In the district court's view, the psychologist's report relied upon by the administrative law judge was too contradictory to provide reliable support for a denial or an award of benefits.
 
 
 5
 On remand from this decision, a third hearing on Colwell's claim was had before an administrative law judge. Once again, the administrative law judge denied benefits to Colwell, ruling that, although Colwell could not return to his past relevant work, he retained the residual functional capacity to perform a restricted range of light and sedentary work. Based on a vocational expert's response to a hypothetical question posed by the administrative law judge, the judge concluded that a significant number of available positions existed in the national economy, and that Colwell could not be considered totally disabled. Specifically, the expert testified that Colwell could perform certain factory jobs such as bench assembly, bench polishing, bench cutting, visual inspection, sorting, packaging, and simple machine operation. The vocational expert testified that approximately 17,000 such jobs existed in the Commonwealth of Kentucky alone.
 
 
 6
 In addition, in response to the district court's concern that Colwell's mental status had not been fully evaluated, the administration requested that psychologist Robert Genthner examine Colwell. Genthner subsequently examined Colwell and completed a medical report that included an assessment of Colwell's ability to perform certain work activities. Genthner's report indicated that Colwell had been socially appropriate and responsive during evaluation, and that Colwell appeared clean, neat, and properly dressed. During the examination, Colwell exhibited no signs of hallucinations or delusions, and his thought processes were logical and goal-oriented. Genthner's report revealed that Colwell had a performance IQ level of seventy-five, along with fifth grade reading skills and third grade mathematical skills.
 
 
 7
 Genthner's diagnosis indicated a malingering/anxiety mood, and an unspecified personality disorder. The psychologist's report stated that Colwell could perform simple, repetitive tasks, and his ability to carry out detailed job instructions was rated at "fair." The report also indicated that Colwell could not consistently carry out complex job instructions. Finally, Genthner rated Colwell's ability to deal with the public as between "fair" and "poor."
 
 
 8
 At Colwell's disability benefits hearing, the administrative law judge asked the vocational expert to assume an individual forty-five to fifty-two years old:[1]
 
 
 9
 who has a tenth grade education, and who is literate perhaps somewhere between marginally and limited education. You can assume that he can read at least a simple message minimally. Assume that this gentleman has the work history that's been discussed. Assume that he is limited to lifting no more than about 10 to 20 pounds on an occasional basis, in that range. He can stand up to about an hour at a time 4 to 6 hours per day. He has no limitation on his ability to sit, balance, stoop, crouch, kneel or crawl, or to reach or handle, push or pull. He should be restricted to a work environment free of severe temperature extremes, chemicals, dust, fumes, and humidity. You can assume also that his ability to deal with the general public is ... fair or perhaps even a little less than fair. So he should be restricted to jobs not involving significant contact with the general public. He retains a good ability to remember and carry out simple job instructions, only a fair ability to carry out detailed but not complex instructions. A poor ability to carry out complex job instructions.
 
 
 10
 The vocational expert testified, as noted above, that approximately 17,000 available jobs existed in the Commonwealth of Kentucky for a person with the assumed characteristics. On the basis of this testimony, as well as all of the other evidence submitted in the case, the administrative law judge concluded that Colwell had the residual functional capacity to perform a significant number of jobs in the community, and therefore was not totally disabled.
 
 
 11
 The administrative appeals council denied review, and thus the administrative law judge's decision became the final decision of the Commissioner. Colwell appealed once again to federal court, and the district court affirmed the Commissioner's denial of benefits. Colwell filed this timely appeal.
 
 
 12
 Our review is governed by 42 U.S.C. § 405(g), which requires us to affirm the Commissioner's decision as long as it is supported by substantial evidence. Barker v. Shalala, 40 F.3d 789, 793 (6th Cir.1994). Substantial evidence is evidence that is reasonably adequate to support a conclusion. Young v. Secretary of HHS, 925 F.2d 146, 147 (6th Cir.1990) (citation omitted). We must also ensure that the correct legal standards were applied by the Commissioner. Landsaw v. Secretary of HHS, 803 F.2d 211, 213 (6th Cir.1986). However, we will not substitute our own judgment for that of the Commissioner merely because we believe substantial evidence exists to support the opposite result. Johnson v. Secretary of HHS, 948 F.2d 989, 992 (6th Cir.1991).
 
 
 13
 Because Colwell did not have the residual functional capacity to return to his previous employment, the burden was on the Commissioner in this case to show by substantial evidence that Colwell "possesses the capacity to perform other substantial gainful activity that exists in the national economy." Varley v. Secretary of HHS, 820 F.2d 777, 779 (6th Cir.1987) (citations omitted). As we explained in Varley, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.' " Id. (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.1984)).
 
 
 14
 Colwell first claims that the hypothetical posed by the administrative law judge did not accurately portray his mental impairments. According to Colwell, because he had a performance IQ of seventy-five, the administrative law judge was required to include the fact that Colwell was severely mentally impaired in his hypothetical question to the vocational expert. See Salmi v. Secretary of HHS, 774 F.2d 685, 693 (6th Cir.1985) (concluding that an IQ of less than eighty qualified as a severe impairment). Colwell further argues that the administrative law judge erred by relying on his numerical grade completed (tenth grade), when it is uncontroverted that he has fifth grade reading skills and third grade mathematical skills. See Skinner v. Secretary of HHS, 902 F.2d 447, 450-51 (6th Cir.1990) (holding that a "numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist").
 
 
 15
 We find Colwell's argument unpersuasive. We first note that our conclusion in Salmi that an individual with an IQ of less than eighty is necessarily severely impaired rested on a Social Security Ruling no longer in effect. Moreover, there was substantial evidence in the record that the claimant in Salmi had attempted a variety of jobs, failing at each, and simply could not function in a working environment. No such evidence exists here. Second, we believe that the administrative law judge's question to the vocational expert, when viewed in its entirety, adequately portrayed Colwell's reduced mental capabilities. The administrative law judge described the hypothetical person as literate, but marginally educated, and able to "read at least a simple message minimally." Further, he described an individual with a "fair or perhaps even a little less than fair" ability to deal with the public, and one able to carry out simple instructions adequately, but unable to carry out complex instructions.
 
 
 16
 In addition, while we agree with Colwell that the Commissioner cannot rely on a numerical grade completed when the evidence establishes that the claimant does not function at that level, we believe that the administrative law judge's hypothetical adequately portrayed Colwell's mental capabilities on this point also. It is true that the judge described an individual "who has a tenth grade education," but, as explained above, the judge also provided the fact that Colwell could only "minimally" read a simple message and was "marginally" educated. When viewed as a whole, we believe the administrative law judge's hypothetical sufficiently set forth Colwell's relevant mental limitations.
 
 
 17
 Colwell next attacks the credibility of the vocational expert who testified at the disability hearing. He claims that the potential jobs listed as available work by the expert are either not listed in the Dictionary of Occupational Titles, or of those that are listed, each has at least one requirement that precludes Colwell from performing that job. Accordingly, Colwell asserts that the administrative law judge erred in relying on the expert's testimony.
 
 
 18
 We will not consider this argument because it was not presented to the district court. See Barker, 40 F.3d at 793. Even if we were inclined to address this argument, Colwell's claim fails. We rejected a similar argument in Barker, noting that the Dictionary of Occupational Titles is not an exhaustive list of all possible jobs, and is only a composite of typical occupations. Id. at 795. In doing so, we noted that the Dictionary is not "the sole source of evidence concerning gainful employment." Id. Accordingly, the vocational expert's testimony is not rendered incredible simply because it does not conform precisely to the Dictionary of Occupational Titles.
 
 
 19
 Colwell's final argument is that the administrative law judge did not properly evaluate his complaints of disabling pain. In order to evaluate claims of disabling pain, this Court has explained that:
 
 
 20
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 21
 Felinsky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir.1994) (quoting Duncan v. Secretary of Health and Human Servs., 801 F.2d 847, 853 (6th Cir.1986)). Here, objective medical evidence establishes that Colwell suffers from several conditions which potentially are very painful. However, the objective medical evidence does not confirm the severity of pain allegedly suffered by Colwell. Dr. Chaney, Colwell's personal physician, concluded that Colwell could lift ten to twenty-five pounds, could stand or walk four to six hours a day, was not limited in his ability to sit, but should not work in an environment with extreme temperatures, chemicals, dust, fumes or humidity. Each of the physicians who treated Colwell over the years noted that some pain accompanied Colwell's various conditions, but none concluded that Colwell's pain was disabling.
 
 
 22
 Colwell, however, argues that the administrative law judge failed to give due weight to the lay testimony indicating that he suffers from debilitating pain. Colwell relies on this Court's decision in Jones v. Secretary of Health and Human Servs., 945 F.2d 1365, 1370 n. 9 (6th Cir.1991), for the proposition that the Commissioner must give appropriate weight to lay testimony that is supported by the objective medical evidence. We do not disagree with this proposition. Here, however, the lay testimony, in the form of letters submitted by Colwell's family and friends, is not supported by the objective medical evidence. Accordingly, the administrative law judge did not err in refusing to credit this testimony over the opinions of every doctor who has examined Colwell.
 
 
 23
 In light of the foregoing, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This age range accurately reflected Colwell's age at the time of the administrative hearing