**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0397n.06

**No. 08-6244**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| **CHRISTOPHER LEE MITCHELL,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| **COMMISSIONER OF SOCIAL** | ) | **EASTERN DISTRICT OF KENTUCKY** |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |

**FILED**
**Jun 02, 2009**
LEONARD GREEN, Clerk

Before: MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff Christopher Lee Mitchell appeals the judgment of the district court affirming the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits. Mitchell argues that the administrative law judge ("ALJ") who adjudicated Mitchell's case erred because substantial evidence did not support his findings and the ALJ failed to give good reasons for rejecting the diagnosis of Mitchell's treating physician. Because we find that substantial evidence supports the ALJ's decision and the protections of the good reasons rule do not apply, we affirm the judgment of the district court.

**I.**

Mitchell is a married, thirty-six year-old step-father of three who lives in rural southeastern Kentucky. Mitchell holds a GED and has spent most of his adult life working for various building

contractors. On May 24, 2003, a car struck Mitchell while he was riding his motorcycle. Mitchell's head, unprotected by a helmet, collided with the car's windshield. After doctors stabilized Mitchell at the local hospital, he was airlifted to the University of Kentucky Medical Center at Lexington where he required a lengthy hospitalization followed by ten days of inpatient physical and occupational therapy. Mitchell also underwent an outpatient rehabilitation regimen, which he voluntarily discontinued. Mitchell has not had any gainful employment since the date of his collision.

On June 3, 2004, Mitchell applied for Social Security disability benefits, alleging that his May 24, 2003, accident had rendered him disabled. The Commissioner denied this initial application on November 16, 2004, and a subsequent motion for reconsideration on March 7, 2005. Following the denial of his motion for reconsideration, Mitchell timely requested a hearing before an ALJ, who held an initial hearing on August 16, 2006. At this hearing, the ALJ heard testimony from Mitchell concerning his remaining physical symptoms from the collision. Mitchell further testified that because of his inability to concentrate for any significant length of time and the fact that he "forget[s] everything," he could not hold even sedentary jobs. While Mitchell testified that his pain – on a scale of one to ten – was an eleven, Mitchell admitted that he drove every other day to the local grocery store to purchase items for his family. Mitchell also stated that he could make simple meals for himself, take care of his own personal hygiene, and occasionally mow his yard.

At the August 16 hearing, the ALJ considered the conflicting opinions of several psychologists who had either seen Mitchell or reviewed his medical records. Dr. Andrew Jones, Ph.D., administered a series of tests to Mitchell in order to determine his level of intellectual

functioning. Jones concluded that Mitchell had an IQ score of eighty-six, placing Mitchell in the "Low Average" category. Jones described Mitchell's visual-motor cognitive abilities, perceptual organization, and working memory skills as average. Jones diagnosed Mitchell with a cognitive disorder not otherwise specified under the criteria found within the *Diagnostic and Statistical Manual of Mental Disorders-IV*. Even though Jones described only "mild to moderate generalized or diffuse impairment" of Mitchell's neuropsychological functioning, Jones nonetheless concluded that Mitchell lacked "the skills and coping mechanism[s] to adapt . . . to pressures normally found in occupational sittings." Dr. Jane Burke, Ph.D., reviewed Jones's conclusions and submitted a report that agreed with Jones that the restrictions on Mitchell's ability to concentrate, function in society, and handle the normal tasks of daily living were mild. Burke, however, did not agree with Jones's ultimate conclusion that Mitchell lacked the ability to function in the workplace, noting that "[t]he concluding examining opinion . . . is not consistent with the objective findings" of the IQ and other tests. Thus, Burke concluded that Mitchell's "mental allegations" were only "partially credible."

In an effort to reconcile these divergent opinions, the ALJ adjourned the hearing and asked Mitchell to submit to an additional series of tests performed by another psychologist, Dr. Robert W. Noelker, Ph.D. Noelker's findings differed sharply from those of Jones and Burke. Noelker had Mitchell take a new IQ test on which Mitchell scored only a sixty-one, reflecting mild mental retardation. Further tests led Noelker to conclude that Mitchell's "ability to understand, retain, and follow instructions at this time is severely impaired." Likewise, Mitchell's ability to handle workplace stresses and pressures was also "severely impaired."

The ALJ then submitted Noelker's report, as well as the record as a whole, to Dr. Doug McKeown, Ph.D. McKeown concluded that there was "no available basis" to justify the significant deterioration recorded by Noelker's tests. While the 2003 motorcycle accident would have caused some initial deterioration, McKeown opined that by the time of Noelker's October 2006 examination, Mitchell's cognitive function should have stabilized absent some intervening event such as another accident. The record indicated that Mitchell had not experienced another serious accident of any type. This led McKeown to conclude that "actual medical documentation to support the conclusions" Noelker reached was non-existent. McKeown suggested that Mitchell undergo additional tests by yet another psychologist to aid in resolving the dispute.

The ALJ held a second hearing to consider this new evidence on April 3, 2007. Mitchell and a neutral vocational expert were also present to give testimony. The ALJ proffered a hypothetical to the vocational expert that asked if there were any jobs in the national economy that an individual with moderate limitations on his ability to execute simple or detailed instructions and slight limitations on his ability to interact with the public and co-workers could perform. The hypothetical further limited the amount of physical exertion the individual could perform to lifting no more than ten pounds regularly, only occasionally climbing stairs or ramps, only occasionally having to keel or crouch, and only occasional fine-hand manipulation with his left non-dominant hand. The vocational expert responded that such an individual could not return to any of the heavily labor-intensive jobs Mitchell had held prior to the collision. Entry level unskilled jobs did exist to fit the limitations proposed, including those of order caller, surveillance monitor and order clerk.

On April 25, 2007, the ALJ issued his opinion denying Mitchell's application for benefits. The ALJ concluded that Mitchell had three severe impairments: cognitive disorder not otherwise specified, chronic back pain with mild degenerative changes in the lumbar spine, and proximal and distal ulnar neuropathy of the left wrist. *See* 20 C.F.R. § 404.1520(c) (requiring that one must be severely impaired to receive disability benefits). The ALJ further concluded that Mitchell had a slight to moderate ability to understand and execute detailed instructions and only a slight limitation of his ability to interact appropriately in the workplace. The ALJ found that Mitchell's impairments limited his physical exertion to carrying no more than ten pounds frequently, standing or walking no more than six hours in an eight-hour day, only occasional climbing or stooping, and only occasional fine-hand manipulation with his non-dominant left hand. Reconciling the divergent medical evidence, the ALJ accepted all of Jones's findings, except Jones's final conclusion that Mitchell could not handle the normal stresses of the workplace. The ALJ also rejected the opinion of Noelker that Mitchell was mildly mentally retarded, relying upon the analysis of McKeown instead. Finally, the ALJ rejected giving controlling weight to the opinion of Mitchell's treating physician, Dr. Mina C. Kalfas, M.D., that Mitchell was disabled.

Mitchell requested that the Social Security Administration's Appeals Council review the ALJ's determination. The Appeals Council denied Mitchell's application on November 13, 2007, making the ALJ's decision the final ruling of the Commissioner. Mitchell brought an action in the United States District Court for the Eastern District of Kentucky to challenge the Commissioner's denial of benefits. *See* 42 U.S.C. § 405(g). The district court denied all of Mitchell's claims of error

5

*Mitchell v. Comm'r of Soc. Sec.*, No. 08-6244

by written order on August 15, 2008. *Mitchell v. Astrue*, No. 08-3-HRW, 2008 WL 3850229, at *1 (E.D. Ky. Aug. 15, 2008). Mitchell timely appealed the district court's judgment.

## II.

In Social Security disability cases, our review is limited to determining if substantial evidence supports the decision of the Commissioner. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241 (internal quotation marks and citation omitted). Under the substantial evidence standard, as long as the Commissioner's decision finds substantial support in the record, we need not agree with the Commissioner's ultimate finding in order to affirm his decision. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## A.

Mitchell asserts that substantial evidence does not support the ALJ's opinion because the ALJ fails to explain how he arrived at his calculation of Mitchell's Residual Functional Capacity ("RFC"). To support this contention, Mitchell specifically argues that the ALJ erred in the weight he gave to the opinion of McKeown and erred by proposing an improper hypothetical question to determine the availability of jobs in the national economy at which Mitchell could work. The Commissioner responds by arguing that it is the role of the ALJ to resolve conflicting medical evidence and that substantial evidence supports the ALJ's ultimate conclusion.

In considering the evidence presented, the ALJ paid particular attention to the opinions of Jones, Noelker, and McKeown. Both Jones and Noelker analyzed Mitchell's neuropsychological

functioning by administering a series of tests. McKeown reviewed the results of these tests along with Jones's and Noelker's conclusions. McKeown had the advantage of reviewing the entire record after all psychological exams had occurred. The ALJ credited Jones's test results that revealed that Mitchell had a low average overall mental functioning capacity. However, the ALJ rejected Jones's conclusion that Mitchell lacked the skills and coping mechanisms to succeed in a workplace environment as inconsistent with Jones's actual supporting data. The ALJ cited McKeown's criticisms of Noelker's report as grounds for discrediting Noelker's diagnosis that Mitchell was mildly mentally retarded. These differing medical opinions led the ALJ to conclude that while some of Mitchell's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms" affecting Mitchell, Mitchell's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] only minimally credible." ALJ Op. at 8. For further support, the ALJ cited to Mitchell's own hearing testimony during which Mitchell admitted to driving regularly, mowing his own yard, and receiving no treatment from any mental health practitioners.

The above summary conclusively demonstrates that the ALJ based his opinion on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241 (internal quotation marks and citation omitted). The ALJ specifically cited the major pieces of medical evidence, assigned weight to each report based upon the consistency of its findings with the medical record as a whole, explained his reasons for rejecting the contrary medical evidence, and drew his conclusion on the basis of the relevant evidence. *See* 20 C.F.R. § 404.1527(b)-(d) (explaining how the ALJ is to weigh contrasting medical opinions). Considering McKeown's

7

opinion was not only not error, it was required. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *1. Social Security Ruling 96-6p expressly provides that the opinion of a state agency psychological consultant such as McKeown "may be entitled to greater weight than a treating source s [*sic*] medical opinion if the State agency . . . consultant's opinion *is based on a review of a complete case record*." *Id.* at *3 (emphasis added). McKeown was the only expert to review the entire case file. Mitchell did not seek any additional medical exams to aid the ALJ in making his determination and in clarifying the inconsistencies. *See Her*, 203 F.3d at 391-92 (claimant bears the burden to provide the evidence for the RFC calculation). The fact that we may have come to a different conclusion is immaterial where substantial evidence also supports the ALJ's findings. *Id.* at 389-90. We therefore hold that the ALJ based his RFC calculation upon substantial evidence. Because the ALJ's hypothetical question to the vocational expert also relied upon the same conclusions as those used to calculate the RFC, we also find that it was not error for the ALJ to rely upon the expert's answers to the hypothetical questions in denying Mitchell's benefits claim. *See* 20 C.F.R. § 416.920(a)(4)(v) (noting that the ALJ uses the RFC calculation to determine if there are other jobs the claimant can perform); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (noting the role of the vocational expert in determining whether benefits are due).

**B.**

Mitchell next argues that the ALJ erred by failing to give good reasons for rejecting the opinion of his treating physician, Dr. Mina C. Kalfas, M.D., that Mitchell's mental impairments resulting from the collision rendered him severely impaired. Citing our opinion in *Young v. Secretary of Health & Human Services*, 925 F.2d 146, 149 (6th Cir. 1990), the Commissioner

responds that Mitchell has waived the issue because his argument before the district court focused upon the ALJ's rejection of Kalfas's conclusions as to the physical causes of Mitchell's pain, not the mental causes on which Mitchell now focuses.

In *Young*, we held that where a claimant had switched her allegations on appeal to reflect that psychological reasons, rather than a physical injury, caused the severe pain she experienced in her back, she had waived her right to argue that the Secretary's rejection of the psychological-cause argument was not supported by objective evidence. 925 F.2d at 149. This is because a claimant "cannot raise an issue before the court of appeals that was not raised before the district court." *Id.* (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Mitchell's primary argument before the district court was that the ALJ erred by failing to accord controlling weight to Kalfas's determinations concerning the effects of his *physical* injuries. *See Mitchell*, 2008 WL 3850229, at *3-4. However, Mitchell also raised before the district court the issue of whether the ALJ erred "by failing to explain how he determined Plaintiff's mental RFC." *Id.* at *2. The calculation of the RFC requires the ALJ to consider the opinion of the treating physician, triggering the good reasons rule. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *7. Therefore, we find that Mitchell has not waived the issue.

On the merits, Mitchell argues that the pertinent regulations and our case law required the ALJ to give Kalfas's opinion controlling weight in the determination of whether Mitchell was disabled. The Commissioner answers that the ALJ did give good reasons for rejecting the treating physician's opinion and that furthermore the ALJ could not give deference to Kalfas's conclusory

statement that Mitchell was disabled because the existence of a disability is a determination solely for the ALJ.

Generally, an ALJ must give the opinion of the claimant's treating physician controlling weight if the ALJ finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). This is because the opinion of the treating physician "bring[s] a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* To protect the claimant, the regulations require that the Commissioner "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [the claimant's] treating source's opinion." *Id.* Thus, when an ALJ denies a claimant's application for benefits, the decision

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, 1996 WL 374188, at *5. We have additionally elucidated a clear rule that when the ALJ fails to give good reasons for rejecting the opinion of the treating physician, reversal and remand to the Commissioner is required – even if substantial evidence otherwise exists in the record to support the Commissioner's decision. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004); *see also Rogers*, 486 F.3d at 242-43.

Nonetheless, the regulations and our case law also make clear that before the ALJ must apply the good reasons rule, there must be a genuine assertion by the treating physician of an opinion involving the claimant's "symptoms, diagnosis, and prognosis." 20 C.F.R. § 404.1527(a)(2); *see*

10

*also Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007). A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule. *Bass*, 499 F.3d at 510 (citing *Young*, 925 F.2d at 151). The question thus becomes whether Kalfas made a sufficient medical judgment to warrant the protections of the good reasons rule.

As the district court noted, nearly all of Kalfas's medical records concern the physical causes of Mitchell's limitations. *Mitchell*, 2008 WL 3850229, at *3-4. Kalfas's only statement concerning the potential psychological causes of Mitchell's pain was as follows:

> However, *his wife* brings to light multiple issues recently regarding his mental state. *She* cites significant irritability, mood changes, and severe difficulties with short-term memory. He can't remember things that he's done around the house. He can't remember where he's left things, and he has difficulty concentrating. He also shows some understanding difficulties in that he tried to have gravel for his driveway delivered by calling the water company, and the phone operator at the water company ultimately had to place his gravel order for him due to his confusion on the phone.
>
> . . . .
>
> Therefore, at this point, it's pretty obvious to me that at least for the time being Christopher is disabled and unable to maintain employment. I think he does need to get a neuropsychiatric evaluation to further define his psychiatric and cognitive difficulty, and he may need further work in this regard. However, I am recommending that he at the present time apply for disability and offered him any assistance we can give in this regard.

(Admin. Rec. at 366 (emphasis added).) No other indications appear in the record concerning Kalfas's impressions, diagnosis, or treatment suggestions for Mitchell's mental state. Kalfas's summary is no more than a statement reflecting the concerns of Mitchell's wife followed by a conclusory statement that Mitchell is disabled and a suggestion that further inquiry may be necessary to determine the merits of the complains of Mitchell's wife. The ALJ properly rejected Kalfas's

11

statement that Mitchell was disabled, as the determination of disability is solely for the ALJ. 20 C.F.R. § 404.1527(e)(1); *Bass*, 499 F.3d at 511. Similarly, the mere regurgitation of third-party statements concerning a claimant's alleged symptoms does not constitute objective medical evidence subject to the protections of the good reasons rule. *Cf. Bass*, 499 F.3d at 510 (stating that a treating physician's report that merely repeats the claimant's assertions is not objective medical evidence). We therefore hold that the ALJ did not err because the good reasons rule did not apply to Kalfas's brief statement concerning the potential psychological causes and manifestations of Mitchell's condition.

**III.**

To be sure, this record includes conflicting opinions about Mitchell's capabilities that are not resolved with absolute certainty. However, because substantial evidence supports the ALJ's determination and the good reasons rule does not apply to the statements made by the treating physician, we affirm the judgment of the district court upholding the Commissioner's denial of Mitchell's application for Social Security disability benefits.