NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0014n.06

Case No. 15-3122

FILED
Jan 08, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KARA ELLEN DOWNS,                          )
                                           )
        Plaintiff-Appellant,               )
                                           )
                                           )   ON APPEAL FROM THE UNITED
v.                                         )   STATES DISTRICT COURT FOR
                                           )   THE SOUTHERN DISTRICT OF
COMMISSIONER OF SOCIAL SECURITY,           )   OHIO
                                           )
        Defendant-Appellee.                )
                                           )
                                           )

BEFORE: SILER, GIBBONS, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Kara Downs ("Downs") appeals the district court's decision affirming the denial of her applications for disability insurance benefits and supplemental security income. For the following reasons, we **AFFIRM**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At age forty-two, Downs suffered a cervical spine injury at work that resulted in a workers' compensation claim, and she alleges that this injury has rendered her physically and psychologically disabled since December 2006. Downs received her high school diploma and, prior to her injury, had worked as a preparation cook, cook, and restaurant manager.

After applying for federal disability benefits, Downs attended a hearing before an Administrative Law Judge ("ALJ") in 2011. According to Downs's testimony, she suffered from

constant neck pain that compelled her to lie down or recline for six hours and restricted her to lifting five to eight pounds, walking for one hour, standing for twenty to forty minutes, and sitting ten to twenty minutes in an eight-hour day. She further stated that she lived alone, performed basic self-care, drove on an unrestricted driver's license, went shopping alone, attended medical appointments, and cared for two dogs and three cats who had medical issues of their own—even though it took her "[p]robably a half hour" to feed them. Of her interactions with family and friends, Downs remarked that she has "distanced [her]self from everybody" and does not see her family "very often at all," although she later claimed that she saw her mother and niece "about once a month," and that her niece, mother, or one of her sisters helped her carry groceries and bags of pet food. Additionally, Downs stated that she experienced panic attacks or "blow-ups" that would affect her if she were in a work setting, and that she could not concentrate, turn her neck, look up or down, use a keyboard, or handle various other tasks.

The ALJ issued his decision, assessing Downs's disability claim according to the customary five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Downs had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Downs's severe impairments consisted of degenerative disc disease of the cervical spine, shoulder pain, tension headaches, and depression—although at step three, the ALJ concluded that her impairments did not meet or medically equal an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1.

Before moving on to step four, the ALJ determined that Downs possessed the residual functional capacity ("RFC") to perform light work with certain limitations, including: no climbing ropes, ladders, or scaffolds; no overhead reaching; only engaging in simple, repetitive tasks, with static duties and changes that can be explained; no strict production quotas; and only

superficially interacting with coworkers and supervisors. In evaluating Downs's RFC, the ALJ considered the objective medical evidence and the opinions of treating, examining, and reviewing medical sources, as well as Downs's own subjective reports about the nature of her impairments.

At step four, the ALJ found that that Downs could not perform her past relevant work; however, at step five he concluded that she could perform a substantial number of other light, unskilled jobs in the national economy, and, therefore, she was not disabled.

The magistrate judge found that substantial evidence supported the ALJ's determination that Downs could perform light work. The district court adopted the report and recommendation and affirmed the ALJ's decision that Downs was not disabled.

## STANDARD OF REVIEW

A district court's decision in a disability case is reviewed de novo. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). The Commissioner's conclusions will be upheld absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

## DISCUSSION

**I.      Substantial Evidence Supported the ALJ's RFC Assessment**

   **A.      The ALJ Reasonably Evaluated the Medical Evidence Regarding Downs's Physical Impairments**

Downs challenges the ALJ's finding that she could perform light work and his weighing of the medical evidence. However, substantial evidence supported the ALJ's RFC assessment.

To begin with, the ALJ considered diagnostic evidence of Downs's physical infirmities that revealed mild-to-moderate findings. For instance, a September 2007 MRI of Downs's

cervical spine showed mild-to-moderate stenosis; May 2008 x-rays of Downs's lumbar spine revealed mild spondylosis; a July 2008 MRI revealed mild spinal stenosis at the C5-C6 levels and mild-to-moderate stenosis at the C6-C7 levels; a September 2008 myelogram revealed "minimal to moderate degenerative changes"; and a September 2010 imaging of Downs's cervical spine did not reveal any worsening when compared to the May 2008 study. Although Downs contends that "[t]he fact that the medical severity of the imaging study findings is characterized as 'mild or moderate' does not entitle the ALJ to draw the conclusion that Plaintiff can perform a range of 'light' work," the evidence was certainly relevant to the ALJ's determination. This diagnostic evidence—which reveals mostly mild-to-moderate findings and no significant degeneration—offers support to the ALJ's RFC determination. Coupled with a proper weighing and discounting of the available medical opinion evidence, the evidence undergirding the RFC assessment becomes substantial.

Contrary to Downs's claim that the ALJ did not provide "good reasons" for discounting the opinions of treating physician Dr. Watson, the ALJ did not err in affording no weight to the opinions. In May 2008, Dr. Watson first opined that Downs was at the sedentary level; by November 2009, Dr. Watson considered Downs "totally and permanently disabled"—citing her loss of range of motion in her neck and shoulder, and a positive MRI. As to Dr. Watson's earlier opinion, the ALJ found that it was inconsistent with other evidence in the record, given that findings of reduced hand and upper arm strength improved and were not repeated on subsequent examinations. Additionally, the ALJ found that Dr. Watson's repeated findings of reduced neck and shoulder motion did not sufficiently support a finding that Downs was limited to sedentary work. And as to Dr. Watson's later opinion, the ALJ correctly concluded that the opinion improperly made a legal determination reserved for the Commissioner. *See* 20 C.F.R.

§ 404.1527(d) (noting that opinions about whether a claimant is disabled are not medical opinions and "will not [be] give[n] any special significance," even if offered by a treating source).

Although under the "treating source rule," an ALJ is required to give controlling weight to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, 20 C.F.R. § 404.1527(c)(2); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), the ALJ here offered sufficiently "good reasons" for discounting Dr. Watson's opinions. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial medical opinion evidence supported the ALJ's determination that Downs was physically capable of performing light work. The ALJ gave significant weight to the December 2009 opinion of state agency reviewer Dr. Hinzman, whose assessment was affirmed by the June 2010 opinion of state agency reviewer Dr. Klyop. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency [physicians] . . . are experts in Social Security disability evaluation."). Dr. Hinzman found that Downs could: occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk for about six hours and sit for about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; and never reach overhead bilaterally. In justifying his reliance on the opinions of these nonexamining physicians, the ALJ cited Dr. Hinzman's findings that (1) the objective medical record did not fully support Downs's subjective reports of limitations, and she had depression/chronic pain overlay which might impact her perception of her own limitations, and (2) Downs was able to care for several pets, perform self-care activities, prepare simple meals, perform light housework, drive occasionally, and shop. The ALJ also gave some weight to independent examining orthopedist Dr. Kohlhaas's

June 2009 opinion that Downs could lift no more than twenty pounds occasionally, given that the opinion "was based on full orthopedic evaluation, is most recent, and appears the least biased." *See* § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Overall, the ALJ provided sound reasons—supported by substantial evidence—for crediting the opinions of Dr. Hinzman and Dr. Kohlhaas, and for giving them greater weight than the opinions of Downs's treating physician, Dr. Watson. *See* § 404.1527(c)(2), (e)(2)(ii); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").[1]

The ALJ also weighed the opinions of two physicians who performed independent medical examinations in connection with Downs's workers' compensation claim. First, the ALJ found independent examining surgeon Dr. Keller's May 2008 opinion unsupported because Downs appeared more physically impaired than in Dr. Keller's evaluation that Downs could occasionally carry up to fifty pounds and frequently carry up to twenty pounds. Second, the ALJ gave no weight to pain management physician Dr. Wachendorf's December 2008 opinion that Downs could not perform overhead work; work no more than two hours per day; only occasionally write; not move her head sideways; and only lift less than one pound with both

---

[1] Downs's reliance on *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), is unavailing, given that the ALJ in *Gayheart* gave little weight to the treating source's opinion, did not provide "good reasons" for discounting the treating source's opinion, and relied on "examples [that were] either taken out of context or [were] offset by other examples." *Id.* at 376–78. Similarly fruitless is Downs's citation to *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987), where this court found that "the ALJ made no finding that the opinions of plaintiff's treating physicians were not supported by sufficient medical data." *Id.* at 320–21. Given the reasons expressly enunciated by the ALJ in weighing the treating and nontreating physicians' opinions, this case is readily distinguishable from *Gayheart* and *Shelman*.

arms. The ALJ concluded that the findings were "so extreme as to be implausible, even considering the clamaint's testimony and typical activities . . . . [particularly given her] testimony regarding her activities such as laundry, vacuuming and caring for sick pets." The ALJ properly rejected these sources on these bases. *See, e.g.*, *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (holding that the ALJ properly discounted treating physician's assessment in light of evidence that plaintiff continued to perform significant household activities which were inconsistent with a finding of total disability).

### B. The ALJ Reasonably Evaluated Dr. Murphy's Opinions Regarding Downs's Mental Impairments

As to her mental impairments, Downs contends that the ALJ should have accepted Dr. Murphy's opinions rather than giving more weight to the opinions of consulting psychologist Mr. Seifert and the state agency reviewing psychologist Dr. Terry. Again, the regulations provide that after declining to give a treating source opinion controlling weight, an ALJ need only provide "good reasons" for discounting that source's opinion. 20 C.F.R. § 404.1527(c)(2); *see Wilson*, 378 F.3d at 544.

As the ALJ noted, Dr. Murphy offered an opinion of Downs's mental functioning after three visits on a referral from her attorney.[2] In his assessment of Dr. Murphy's opinion, the ALJ observed that Dr. Murphy's March 2010 opinion was in the form of a standard form

---

[2] Although this does not change the result, it is worth noting that the handful of visits Downs had with Dr. Murphy do not necessarily render Dr. Murphy a "treating source" with an "ongoing treatment relationship" with Downs. 20 C.F.R. § 404.1502; *see, e.g.*, *Helm*, 405 F. App'x at 1000 n.3 ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source."); *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition."); *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *9 (6th Cir. Nov. 15, 2000) (finding that a doctor was "not a treating source" even though the doctor had examined the claimant three times over a two-year period).

questionnaire, was lacking narrative explanation, and was apparently based on Downs's subjective reports rather than objective evidence. Under the regulations, a treating source's medical opinion of an individual's mental impairments should reflect the source's judgment about the nature and severity of impairments, and focus on "medically demonstrable phenomena." 20 C.F.R. §§ 404.1527(c)(3), 404.1528(b). According to these standards, the ALJ appropriately assigned little weight to Dr. Murphy's March 2010 opinion.

Moreover, the ALJ reasonably considered how Dr. Murphy's opinions presented multiple inconsistencies that undermined his opinions. For instance, although Dr. Murphy opined that Downs was not able to handle any work stress in April 2010, in December 2010, Dr. Murphy noted that Downs was only moderately impaired overall and provided no finding on her ability to handle work stress, which was inconsistent with his April 2010 opinion. Additionally, the ALJ noted that Downs has "never displayed psychological decompensation or required emergency psychiatric treatment," her condition apparently improved with therapy and psychotropic medication, and she "continues to care for five pets, sees family, and goes shopping"—all of which is at odds with Dr. Murphy's opinion that she was "markedly impaired by her ongoing depression." Therefore, the ALJ properly discounted Dr. Murphy's opinions in light of these inconsistencies.

Dr. Murphy's opinions were also undermined by the opinion of consulting psychologist Mr. Seifert and state agency reviewing psychologist Dr. Terry. In his December 2009 opinion, Mr. Seifert found that Downs had mild limitations in her abilities to relate to others and understand and follow instructions, and moderate limitations in her abilities to maintain attention to perform simple/repetitive tasks and withstand the stress and pressures associated with day-to-day work. In April 2010, Dr. Terry opined that Downs "is capable of simple repetitive tasks in

which duties are static and changes can be explained," involving only "superficial interaction with co-workers and supervisors," and in a setting without production quotas. The ALJ appropriately gave greater weight to the opinions of Mr. Seifert and Dr. Terry than those of Dr. Murphy, given that their expert opinions were "more consistent with the overall evidence and the claimant's testimony" and the "objective findings on examination."

Accordingly, substantial evidence supported the ALJ's RFC assessment.

## II.    Substantial Evidence Supported the ALJ's Credibility Assessment

"Upon review, we are to accord the ALJ's determinations of credibility great weight and deference[,] particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

The ALJ referred to several inconsistencies in Downs's testimony regarding her physical limitations. For instance, although Downs testified that her constant neck pain prevented her from sitting for more than twenty minutes, the ALJ noted that she "never stood or indicated that she needed to stand during the hearing, which lasted just over one hour." This observation supported the ALJ's conclusion that Downs's "alleged sitting restrictions, therefore, to 10 minutes at a time for up to 20 minutes total in 8 hours, are not persuasive at all."[3] Moreover, the ALJ contrasted Downs's claimed physical limitations to the facts that she performed basic self-care, drove on an unrestricted driver's license, sometimes shopped alone, attended medical appointments, cared for five pets with medical issues of their own, and did laundry and some

---

[3] Although this court has previously rejected the "sit and squirm" test as the *sole* basis for discrediting a claimant's complaints of physical pain, *Martin v. Sec'y of Health & Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984) (quoting *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983)), a claimant's demeanor at a disability hearing is certainly relevant to an ALJ's assessment of a claimant's credibility, *see id.*

cleaning. Such inconsistent statements reasonably supported the ALJ's conclusion that Downs's allegations of the extent of her physical impairments were not credible.

The ALJ also pointed to similar inconsistencies in Downs's allegations about the severity of her mental impairments. For one, the ALJ reasonably concluded that Downs's daily activities revealed that she possessed the mental capacity to complete at least simple tasks. Further, the ALJ observed that Downs was able to maintain good relations with her mother, sister, and niece, given that they reportedly helped her prepare meals and carry groceries with some frequency—contrary to her testimony that she saw her family only once a month. The ALJ also noted that Downs's reports that she had no problems following verbal instructions or getting along with authority figures were at odds with her other testimony that she could not follow instructions and experienced angry outbursts that would prevent her from working.

"Most significantly, however," the ALJ found that "the clinical and objective findings do not support [Downs's alleged] extreme restrictions" in both physical and mental functioning. Regarding her physical impairments, although Downs had reported restrictions to range of motion and tenderness to her neck, the most recent imaging of Downs's cervical spine showed only mild-to-moderate findings, with no recommendation for further surgery. With respect to her mental impairments, the ALJ noted that Downs's own treating psychotherapist assessed only moderate impairments overall, which is inconsistent with the severity of her alleged mental limitations.

Overall, given that the ALJ's credibility findings are supported by substantial evidence, they should not be disturbed. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

**AFFIRMED.**