NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0459n.06

No. 15-4213

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 11, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAYNE SORRELL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: KEITH, CLAY, and WHITE, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Appellant Jayne Sorrell ("Sorrell") appeals the district court's affirmance of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Sorrell's applications for disability insurance benefits and supplemental security income. Sorrell sought judicial review of the decision, asserting that the Administrative Law Judge ("ALJ") erred in concluding that Sorrell is not disabled. A magistrate judge, concluding that the ALJ did not err, recommended that the Commissioner's decision be affirmed. Over Sorrell's objections, the district judge adopted the magistrate judge's recommendation. Sorrell now appeals. Because there is substantial evidence in the record to support the ALJ's decision, we **AFFIRM.**

## I.  BACKGROUND

### A.  Sorrell Applies for Disability Insurance Benefits

Sorrell was born in 1959.  She has two years of online college education.  Her past relevant work experience includes jobs as an assistant manager, retail cashier, circuit board assembler, data entry clerk, front desk clerk, cashier II, and an unspecified position in dining services.  Sorrell has been diagnosed with various illnesses, including degenerative disc disease of the spine, edema (swelling) of the lower extremities secondary to a mass on the kidney, hypertension, and obesity.

Between 2009 and 2011, Sorrell made several trips to the Emergency Room and to outpatient clinics complaining of various ailments, such as hip pain, back pain, leg pain, and swelling in the legs.

On November 29, 2010, Sorrell applied for disability insurance benefits and supplemental security income.  Sorrell alleged that her disability, stemming from both physical and psychological conditions, began on May 1, 2010.

### B.  The Commissioner's Denial

Sorrell's claims were denied initially on April 6, 2011, and upon reconsideration on September 7, 2011.  Thereafter, Sorrell filed a written request for a hearing.  The hearing was held on October 11, 2012 via video conferencing, with the ALJ in Chicago, Illinois and Sorrell in Dayton, Ohio.  At the start of the video conference, Sorrell's attorney requested that the date of the onset of the alleged disability be changed from May 1, 2010 to September 25, 2010 because Sorrell had continued working until September 25, 2010.  The ALJ permitted this amendment. At the hearing, Sorrell and a vocational expert, Brian Wilmer, testified.[1]

---

[1] While the ALJ referred to the vocational expert as Brian "Womer," the hearing transcript reflects that the expert identified his last name as "Wilmer."  We refer to him as "Wilmer."

### 1. Sorrell's Hearing Testimony

Sorrell testified that she stopped working on September 24, 2010 because she "couldn't stand." She believed it was due to "disc problems" and "a pinched nerve." She also testified that she has "been having severe bouts of swelling" in her legs. She stated that her doctors advised her to elevate her legs above heart level to alleviate the swelling. When asked how often she is supposed to elevate her legs, Sorrell testified that she is supposed to do it "anytime they swell." She testified that she finds herself elevating them "often." However, she stated that there are "periods of time where maybe a week might go by that [she does not] have swelling, but then it reoccurs." She testified that edema medication "seems to be helping." She testified that she does not have any problems with the use of her hands or arms.

With respect to daily activities, Sorrell testified that she is trying to learn some things on the computer, but that she tends to fall asleep while reading. She "tr[ies] to clean," but she has to take "a lot of breaks" while washing dishes if she has "a lot of dishes." She asserted that she "might be able to stand a half an hour at most, without [her] pain" getting to an "extreme point." Sorrell also testified that she has to use a walker if she has to walk very far, such as more than "a couple" of blocks, or has to stand very long. She stated that she takes her walker to her medical appointments when she has to walk far from the parking lot to the building. When questioned as to where she puts the walker on those occasions, she responded that she leaves it in the car. When pressed further on the point, she stated that she is able to park close enough such that she does not need the walker. Sorrell drives, shops at least once a week, cooks, does laundry, uses a checkbook and pays bills, vacuums, sweeps, cleans the toilet, and dusts. She takes "a lot of breaks" while sweeping because being on her feet and "the motion of sweeping causes pain."

Sorrell previously abused alcohol and marijuana. She began attending Alcoholics Anonymous ("AA") meetings in 2006, and she still attends as often as she can. In July 2010 she started volunteering at an AA coffee shop, and continued to volunteer there until it closed in August 2011. At the shop she made coffee and made sure the door was open. She would volunteer there "at least three days a week."

With respect to her current pain, she testified that while she takes three different kinds of pain medications, she does not think about the pain when sitting down. She testified that she has pain in her back, spine, and feet. She described the pain in her back and spine as usually a "constant . . . burning kind of pain." But sometimes it is a "stabbing pain."

## 2. Vocational Expert Testimony – Brian Wilmer

Wilmer testified that he has been working in the vocational field for over twenty years. The ALJ gave the vocational expert multiple hypotheticals to consider.

First, he asked Wilmer to assume Sorrell's limitations were as follows: "lifting [up] to 20 pounds occasionally, 10 frequently, stand and sit six hours each in an eight hour work day, walking limited to two blocks at a time. . . . [O]ccasional stairs, stoop, balance, kneel, crouch, or crawl. No ladders. Just vocational exposure to hazards such as heights and moving parts." Wilmer testified that with these limitations Sorrell could perform past work, specifically as a retail cashier, circuit board assembler, a data entry clerk, and a cashier II.

Second, the ALJ asked Wilmer to assume Sorrell's limitations were as follows: "lifting 10 pounds occasionally, and five frequently, stand[ing] two hours in an eight hour work day, sit[ting] for six, and the rest stays the same as in the first hypothetical." Wilmer testified that, with these limitations, Sorrell could perform the job of data entry clerk and circuit board assembler at a "reduced light range." The ALJ then slightly modified this hypothetical to contain

a restriction for only working four hours per day. Wilmer opined that under the four-hours-per-day restriction no past work of Sorrell's could be done on a full-time basis. On cross-examination, Wilmer opined that, hypothetically, if Sorrell needed to be in a reclined position so as to elevate her feet to waist level, she would not be able to do any of her past jobs "in such a position."

During the examination of Wilmer, the ALJ also noted that Sorrell had a period of no earnings in the 1990s, but that after that, up until 2010, she had a "good earnings history." Sorrell explained that in the 1990s she was married and raising a son, and her then-husband made enough money for her to stay at home.

### 3. The Relevant Medical Opinions

The ALJ gave "partial weight" to the opinion of Dr. Kevin Malloy, who opined that Sorrell was limited to "occasional lifting/carrying up to ten pounds and frequent lifting/carrying up to five pound[s]." Dr. Malloy also opined that Sorrell could only stand for two hours in an eight-hour workday. The ALJ noted that these conclusions from Dr. Malloy were supported. However, the ALJ rejected Dr. Malloy's opinion that Sorrell could only sit for twenty minutes at a time; the ALJ reasoned that this sitting limitation was not supported partly because Sorrell "was able to remain seated throughout the hearing, which lasted over forty minutes with no reported difficulties or visible distress." The ALJ also did not adopt Dr. Malloy's opinion that Sorrell can only sit for three hours total in an eight-hour workday.

The ALJ took note of a state agency reviewer's, Dr. Edmond Gardner's, opinion that Sorrell's residual functional capacity is within the "light exertional range." Dr. Gardner further opined that Sorrell could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, walk, and sit for about six hours in an eight-hour workday. The ALJ noted

that while Dr. Gardner's opinion has convincing evidentiary value, the record and combination of impairments instead supported a finding that Sorrell has an even lower residual functional capacity range—i.e., that Sorrell's limitations, in some instances, were even more extensive than Dr. Gardner opined.[2]

### 4. Sorrell's Residual Functional Capacity

The ALJ concluded that Sorrell's residual functional capacity ("RFC")[3] was within the "sedentary" work range. The ALJ determined that Sorrell's RFC reflected that Sorrell has the following limitations: occasional lifting of ten pounds; frequent lifting of five pounds; standing for two hours in an eight-hour workday; sitting for six hours in an eight-hour workday; walking only two blocks at a time; occasional stair climbing, stooping, and balancing; no kneeling, crouching, crawling, or ladder climbing; and only occasional exposure to hazards (i.e., heights and moving parts).

### 5. Adverse Credibility Finding

The ALJ concluded that Sorrell's testimony regarding her limitations was not credible. In rejecting her testimony, the ALJ reasoned as follows:

> While [Sorrell's] medically determinable impairments could reasonably be expected to cause the alleged symptoms, [Sorrell's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment for [three] reasons. First, the medical evidence in [the] record establishes that [Sorrell's] residual function[al] capacity is within the sedentary exertional range. Second, [Sorrell's] activities of daily living are inconsistent with [her] allegations. Finally, the opinion evidence in [the] record establishes that [Sorrell's] residual functional capacity is greater than that alleged.

With respect to Sorrell's testimony being inconsistent with the limitations in the RFC, the ALJ expounded that "the objective medical evidence in the record is incongruent with [Sorrell's]

---

[2] While the ALJ considered other medical opinions, none of them is relevant for purposes of this appeal.

[3] A residual functional capacity reflects "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

allegations." He noted that in August 2011, Sorrell went to the ER with a report of chronic back pain, but upon examination, she had "no restriction of range of motion of the back or upper or lower extremities." And "[d]uring the most recent physical examination in June 2012, [Sorrell's] musculoskeletal examination was normal with no joint swelling, no warmth or redness, and no restriction in range of motion." Additionally, Sorrell had "no back tenderness and . . . full range of motion of the extremities." He noted that she had swelling in her feet at times, but that the swelling decreased with the elevation of the feet. The ALJ also noted that "the record contains no prescription for an assistive device and minimal reports of use of an assistive device to ambulate, which is inconsistent with [Sorrell's] testimony." He concluded that, "[i]n aggregate, the medical evidence in [the] record is at odds with the extreme limitations to which [Sorrell] testified." "To the contrary, the medical evidence affirmatively establish[es] some limitations related to the physical impairments, but nothing that limits [Sorrell's] residual function[al] capacity beyond that found in this Decision."

The ALJ also noted that Sorrell was able to prepare simple meals, perform various household tasks, handle personal care, drive, shop, and volunteer at a coffee shop during the period of claimed disability. He concluded that "this high level of functioning is inconsistent with a claim of an inability to perform a range of sedentary exertional work."

### 6. The ALJ's Conclusion

The ALJ applied the five-step process[4] and reasoned that, in light of the RFC, the medical evidence in the record, and the vocational expert's testimony, Sorrell could perform work as a data entry clerk and a circuit board assembler under these restrictions. Accordingly, Sorrell was not disabled.

---

[4] The Social Security Administration ("SSA") "has established a five-step sequential evaluation process for determining whether an individual is disabled." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009).

### C. Procedural History

The Appeals Council denied Sorrell's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). Sorrell subsequently filed a complaint in federal district court for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Sorrell only raised errors relating to her claim for physical disability rather than for any mental impairments. In the district court, a magistrate judge issued a Report and Recommendation, recommending that the Commissioner's decision be affirmed. Sorrell timely filed objections. The district judge overruled Sorrell's objections and adopted the recommendation of the magistrate judge. Sorrell timely appealed to this court.

## II.    APPELLATE JURISDICTION

This court has jurisdiction on appeal to review the Commissioner's denial of disability benefits. *Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir. 1993).

## III.    STANDARD OF REVIEW

We review the district court's conclusions in social security cases de novo. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). The Commissioner is tasked with determining whether a claimant is disabled within the meaning of the Social Security Act. *Blakely*, 581 F.3d at 405 (citing 42 U.S.C. § 405(h)). "Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Id.* at 405−06 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "The substantial-evidence standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Id.* at 406 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d

387, 390 (6th Cir. 2004)). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Accordingly, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Callahan*, 109 F.3d at 273). However, "[e]ven if supported by substantial evidence," the "decision of the Commissioner will not be upheld where the [Social Security Administration] fail[ed] to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

### A. Disability Defined & The Five-Step Process

In order to be entitled to disability insurance benefits, "an individual must be under a disability within the meaning of the Social Security Act." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009).[5] Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "To be found disabled," a claimant's impairments "must not only prevent" the claimant from doing her previous work, but they "must also render [the claimant] unable to engage in any other kind of work that exists in significant numbers in the national economy." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

---

[5] "The individual also must be insured for disability insurance benefits, have not attained retirement age, and have filed an application for benefits." *Id.* at n.5 (citing 41 U.S.C. § 423(a)(1)). The Commissioner does not contend that Sorrell failed to satisfy any of these requirements.

The Social Security Administration ("SSA") "has established a five-step sequential evaluation process for determining whether an individual is disabled." *Rabbers*, 582 F.3d at 652. "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Id.* Our focus in this case is on Step Four. The process can be summarized as follows:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*See id.*; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Bowen*, 478 F.3d at 746.

This process includes a burden-shifting analysis. *See Jones*, 336 F.3d at 474. In steps one through four, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Id.* However, in step five, the "burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.*

Step Four, the one examined here, "necessarily entails a comparison of the physical demands of the claimant's past relevant work with [her] present mental and physical capacity." *Walters*, 127 F.3d at 529 (quoting *Veal v. Bowen*, 833 F.2d 693, 697 (7th Cir. 1987)). The Commissioner's denial of Sorrell's claim at Step Four was "proper if there is substantial evidence in the record to support the conclusion that" Sorrell "could perform [her] past relevant work." *See id.*

## B. Sorrell's Claims

On appeal Sorrell asserts that: (1) the ALJ failed to consider the need for Sorrell to periodically elevate her legs; (2) the ALJ failed to follow SSA requirements; and (3) the ALJ erred in assessing Sorrell's credibility. For the following reasons, none of Sorrell's claims requires reversal.

### 1. The ALJ did not fail to consider the need for Sorrell to periodically elevate her legs

Sorrell argues that the ALJ failed to consider the need for her to elevate her legs. Appellant Br. at 26. But this argument is belied by the record. The ALJ specifically noted in his findings of facts that Sorrell has swelling in her feet at times, but the swelling decreased with the elevation of her feet. And as Sorrell herself admits, the ALJ listed her swelling as a severe impairment. It is clear from the record that the ALJ considered her swelling *and* the need for her to elevate her legs. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (explaining that the ALJ considered obesity where he made explicit mention of obesity in his findings of facts).

Sorrell also asserts that the need for her to elevate her legs should have been included in the ALJ's RFC assessment. *See* Appellant Br. at 29. However, the ALJ was not required to include a limitation for elevating legs in the RFC because, although there were some treatment

records that mentioned leg elevation as a treatment for edema, no physician indicated that Sorrell's edema caused work-related functional limitations, and no medical expert opined that Sorrell would need to elevate her feet to waist level during the workday or even every day.[6] Indeed, Sorrell herself testified that her swelling was an intermittent problem that may not occur for over a week at a time. She testified that she only needs to elevate her legs when the swelling occurs, and that the medication she is on "seem[s] to be helping" the swelling. She also stated that she does not think about the pain when she is sitting down. For the foregoing reasons, Sorrell's arguments that the ALJ failed to consider the need for her to periodically elevate her legs, and erred by not including such a limitation in the RFC, are without merit.[7]

## 2. The ALJ did not fail to follow the SSA's regulatory requirements

Sorrell alleges four bases to support her argument that the ALJ failed to follow the SSA regulatory requirements: (a) the ALJ erred in "fail[ing] to indicate which part of [Dr. Malloy's] opinion was given weight;" (b) the ALJ applied the "sit and squirm" test[8] in rejecting Dr. Malloy's sitting limitation; (c) the ALJ erred in not considering the opinion from Marc Wise,

---

[6] Sorrell's argument that some of the doctors *implicitly* opined that she has to elevate her legs during the workday is unavailing. She asserts that the doctors necessarily opined that she must lie down or recline during the workday because they limited her ability to sit and stand to a few hours. Appellant Br. at 26. We cannot interpret the medical records to say what they do not say. *See McAlister v. Liberty Life Assur. Co. of Boston*, No. 15-5801, 2016 WL 2343030, at *8 (6th Cir. May 4, 2016) ("[W]e are not medical specialists and that judgment is not ours to make." (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622−23 (6th Cir. 2006))).

[7] Sorrell's reliance on the vocational expert's statement in support of a leg-elevation limitation is misplaced. *See* Appellant Br. at 29. The expert testified that *if* Sorrell needed to be in a reclined position from elevating her feet to waist level, she would not be able to do any of her past jobs "in such a position." The expert was responding to a hypothetical question posed on cross-examination. However, in order for the hypothetical response to shed any meaningful light on Sorrell's disability claim, a critical link was needed—medical evidence that Sorrell needs to be in a reclined position during the workday. *Cf. Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence . . . the question must accurately portray a claimant's physical and mental impairments."). Sorrell failed to supply that missing link, and it was her burden to do so. *See Jones*, 336 F.3d at 474.

[8] The "sit and squirm" test refers to when an ALJ denies a claimant's claim for disability based *solely* on the claimant's demeanor at a hearing. *Martin v. Sec'y of Health and Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984).

MD, and Jodi Lawson, RN; and (d) the ALJ acted as his own medical expert. Appellant Br. at 30−31; 33−35.[9] We address each argument in turn.

*(a) Dr. Malloy*

Sorrell argues that the ALJ violated SSA requirements because he failed to indicate which part of Dr. Malloy's opinion was given weight. Sorrell asserts that "most significantly" the ALJ failed to address or assign weight to Dr. Malloy's overall sitting limitation of three hours in an eight-hour workday. Appellant Br. at 31. Sorrell argues that the "ALJ's decision requires a higher and more specific level of analysis than what was provided" here. *See* Appellant Reply Br. at 8; Appellant Br. at 31.

These arguments were presented for the first time on appeal, and, therefore, we will not review them. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) (declining to address claimant's argument regarding the ALJ's failure to discuss certain evidence because the argument was raised for the first time on appeal); *see also Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) (noting that a social security disability claimant "cannot raise an issue before the court of appeals that was not raised before the district court").[10]

*(b) The "Sit and Squirm" Test*

Sorrell also argues that the ALJ applied the improper "sit and squirm" test in rejecting Dr. Malloy's twenty-minute sitting limitation. Appellant Br. at 31. This argument was presented to the district court. In support of this argument, Sorrell asserts that it was improper for the ALJ to conclude that Dr. Malloy's twenty-minute sitting limitation should not be afforded weight

---

[9] Although Sorrell argued in the district court that the ALJ erred in failing to give controlling weight to the opinion of her treating physician, Dr. Tewell, she has abandoned that argument on appeal by not raising it. *See Enertech Elec., Inc. v. Mahoning Cty. Comm'rs*, 85 F.3d 257, 259 (6th Cir. 1996) (noting that issues which were raised in the district court, yet not raised on appeal, are considered abandoned and not reviewable on appeal).

[10] Even if we indulged these arguments, they would fail because the ALJ did identify the portions of Dr. Malloy's opinion that were given weight—the lifting, carrying, and standing limitations. The ALJ commented that these findings of Dr. Malloy were "consistent with the objective imagine [sic] and clinical examination findings."

because Sorrell could sit through a forty-minute hearing without apparent distress. *See* Appellant Br. at 31.

Contrary to Sorrell's assertions, observations of a claimant's behavior at a hearing are "material, relevant, and admissible" factors for the ALJ's consideration. *Martin v. Sec'y of Health and Human Servs.*, 735 F.2d 1008, 1010 (6th Cir. 1984). It is true that where the *only* factor the ALJ relies upon in denying disability is the person's demeanor at the hearing, the ALJ has employed the "infamous and thoroughly discredited 'sit and squirm' test." *Id.* Accordingly, an "ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation." *Id.* Here, the ALJ clearly cited other evidence for denying Sorrell's claim. Even Sorrell does not argue that her ability to sit during the hearing was the *sole* basis for the ALJ's denial of her claim.[11]

*(c) Dr. Wise & Nurse Lawson*

Sorrell argues that the ALJ erred in not considering the opinion from Marc Wise, MD and Jodi Lawson, RN. Appellant Br. at 33. The "opinion" from Dr. Wise and Nurse Lawson is a discharge summary generated after Dr. Wise and Nurse Lawson examined Sorrell in the ER for swelling in her legs. "The SSA promises claimants that all ALJs 'will evaluate every medical *opinion* [they] receive.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (alteration in original) (emphasis added) (quoting 20 C.F.R. § 404.1527(d)). The Government asserts that the discharge summary is not a medical opinion. *See* Appellee Br. at 26.

We need not decide whether the discharge summary was a "medical opinion" because Sorrell failed to present this argument to the district court. Indeed, neither Dr. Wise nor RN Lawson was even mentioned in Sorrell's Statement of Errors to the district court. Sorrell cannot

---

[11] Because the ALJ did not apply the "sit and squirm" test, it is of no moment that the ALJ observed Sorrell's demeanor through video conferencing rather than in person.

seek review of some claims of error with the district court and then—after losing on those claims—seek review of wholly new claims of error on appeal. *See Young*, 925 F.2d at 149. Accordingly, Sorrell's argument on this point is foreclosed.

*(d) The ALJ did not act as his own medical expert*

Sorrell argues that the ALJ acted as his own medical expert for two reasons: (i) the RFC is not supported by any treating or examining medical source, Appellant Br. at 35; and (ii) the non-examining state agency reviewing opinions were based on a substantially incomplete record. *Id.* As a preliminary matter, the second issue was raised for the first time in this appeal. Accordingly, it is foreclosed. *See Ealy*, 594 F.3d at 513. We turn now to addressing the first issue.

To begin, the ALJ considered the opinion of a state agency reviewer whose assessment affirmed the opinion of another state agency reviewer. The most recent agency reviewer, Dr. Gardner, opined that Sorrell's RFC is in a "light" exertional range and that she could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, walk, and sit for about six hours in an eight-hour workday. Instead of giving significant weight to the state agency reviewers, the ALJ concluded that the other evidence in the record supported an RFC that was *even more favorable to Sorrell*: that she could only perform a range of "sedentary" work. An individual who can perform light work without additional limiting factors can also perform sedentary work. *See* 20 C.F.R. § 404.1567(b).

A "sedentary" range is generally associated with sitting for about six hours in an eight-hour workday. *See* SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996) (noting that in a sedentary range "[s]itting would generally total about 6 hours of an 8-hour workday"); *see also Mager v. Comm'r of Soc. Sec.*, 145 F.3d 1332, at *2 n.2 (6th Cir. 1998) (table). Because two

reviewing doctors opined that Sorrell could perform light work jobs and sit for six hours in an eight-hour workday, the ALJ's conclusion that Sorrell could perform a range of sedentary work is supported by substantial evidence in the record. *Cf. Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 554 (6th Cir. 2016) (holding that the ALJ's RFC assessment that the claimant could do light work was supported by substantial evidence where the ALJ gave "significant weight" to the opinion of a state agency reviewer whose assessment was affirmed by the opinion of another state agency reviewer).

The RFC is not only supported by the state agency reviewers' opinions, however; it is also largely supported by Dr. Malloy's opinion, the opinion Sorrell claims the ALJ failed to properly evaluate. The ALJ adopted Dr. Malloy's lifting, carrying, and standing limitations for the RFC. Finally, the ALJ's RFC finding that Sorrell is "limited to only walking two blocks at a time" is supported by Sorrell's own testimony. For the foregoing reasons, Sorrell's argument lacks merit.

### 3. The ALJ did not err in assessing Sorrell's credibility

"[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. Accordingly, "we are limited to evaluating whether or not the ALJ's explanations for partially discrediting" a claimant "are reasonable and supported by substantial evidence in the record." *Id.* However, we have declined to give substantial deference to an ALJ's "unexplained credibility finding" where the claimant's testimony was "entirely consistent" with the medical evidence in the record, such that there was literally no medical evidence in the record that conflicted with the claimant's testimony regarding her pain. *See King v. Heckler*, 742 F.2d 968, 974−75, 975 n.2 (6th Cir. 1984).

Further, "[t]here is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475. "Nevertheless, an ALJ is not required to accept the claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476.

The ALJ noted multiple inconsistencies in Sorrell's testimony. For example, the ALJ noted that Sorrell's testimony about the use of an assistive device such as a walker to get around was inconsistent with the record that contained no prescription for such a device and minimal reports of the use of an assistive device. He also noted that despite Sorrell's claims of extreme pain, the "most recent physical examination" showed that her "musculoskeletal examination was normal with no joint swelling, no warmth or redness, and no restriction of range of motion." Additionally, there was "no back tenderness," and Sorrell "had a full range of motion of the extremities." The ALJ contrasted Sorrell's ability to do daily activities with her reports of pain—noting that Sorrell is "able to prepare simple meals, perform various household duties with breaks, handle personal care, drive, and shop." Sorrell was even able to volunteer at a coffee shop until it closed in August 2011, during the period she claims she was disabled. The ALJ concluded that this level of functioning is inconsistent with Sorrell's claim that she cannot perform a range of sedentary work. This conclusion was reasonable and supported. *See Downs*, 634 F. App'x at 556-57 (holding that similar inconsistent statements reasonably supported the ALJ's conclusion that the claimant's allegations of the extent of her physical impairments were not credible); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543−44 (6th Cir. 2007) (noting that the ALJ's adverse credibility finding was supported, among other things, by the

claimant's ability to "do a variety of daily activities," such as washing "dishes, light cooking, talk[ing] on the telephone, shop[ping]" and occasionally going to church).

Sorrell argues that it was improper for the ALJ to consider Sorrell's daily activities in his credibility finding. Appellant Br. at 45. She argues that claimants are not required to live as "isolated, immobile hermits." *Id.* While claimants are not required to live as hermits, it is entirely appropriate for the ALJ to consider this information in determining whether her claims about pain and other limitations are credible. *See Cruse*, 502 F.3d at 544; *Young*, 925 F.2d at 150.[12]

Sorrell also argues that the ALJ applied the wrong legal standard when he stated that Sorrell's statements concerning her alleged symptoms and their limiting effects "are not credible to the extent they are inconsistent with the [] residual function[al] capacity." As Sorrell notes, this language was referred to as problematic "template" or "boilerplate" language by the Seventh Circuit. *See Bjornson v. Astrue*, 671 F.3d 640, 645−46 (7th Cir. 2012). But Sorrell's reliance on this case is misplaced, because the Seventh Circuit did not suggest that this language can never be used. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (clarifying that the ALJ's use of the template language is not reversible error when it is accompanied by an adequate explanation of the ALJ's credibility finding). This court has also addressed the template, explaining that the "chief concern with the popularity of this template, however, is the risk that an ALJ will mistakenly believe it sufficient to *explain* a credibility finding, as opposed to merely introducing or summarizing one." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir.

---

[12] Sorrell's reliance on the Seventh Circuit case of *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) for the proposition that heavy reliance on daily activities in making disability determinations is "deplorable" is unavailing. *Bjornson* merely criticized the failure of an ALJ to recognize differences between daily activity and activities in a full-time job. *Id.* While the applicable regulations state that "[g]enerally, we do not consider activities like taking care of yourself, household tasks, hobbies," etc. to be "substantial gainful activity," 20 C.F.R. § 404.1572(c), the regulations do not prohibit the ALJ from assessing such activities in determining the claimant's credibility regarding pain and other limitations.

2015). Thus, usage of the template to introduce the ALJ's credibility finding is not by itself erroneous. Here, the ALJ provided an adequate explanation of the adverse credibility finding, pointing to, among other things, Sorrell's inconsistent statements, and her failure to provide medical evidence supporting her claims regarding the intensity and pervasiveness of her pain.

Lastly, Sorrell argues that she is entitled to "substantial credibility" because of her "exemplary work" history. Appellant Br. at 47−48. The ALJ noted that since a period of unemployment in the 1990s, Sorrell has had a "good" earnings history. In support of her proposition that she is therefore entitled to "substantial credibility," Sorrell relies on *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). But nothing in *Felisky* supports that proposition. *See id.* (noting only that Felisky's "long . . . work history" coupled with the fact that her alleged disability "can be traced to a specific onset date" was an "additional factor" supporting her credibility).

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.